PEARL L. HINNENKAMP, ADMINISTRATRIX, APPELLEE, V. METROPOLITAN LIFE INSURANCE COMPANY, APPELLANT.
279 N. W. 784

FILED MAY 27, 1938. No. 30153.

*Beghtol, Foe & Rankin* and *Rinaker, Delehant & Hevelone,* for appellant.

*Jack, Vette & Lovewell, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE and CARTER, JJ., and MUNDAY, District Judge.

MUNDAY, District Judge.

This action was brought by Pearl L. Hinnenkamp, administratrix, to recover from the defendant on an industrial life insurance policy on the life of Lou W. Hinnenkamp, her husband. The petition is in the usual form, alleging the execution and delivery of the policy, the payment of all premiums due thereon, the death of the insured, and the furnishing of proofs of loss, and the failure of the defendant to pay the claim.

Defendant joined issue by answer, alleging that the insured procured the policy by fraud and misrepresentation. For further defenses, it was alleged that the policy contained provisions, in substance, as follows: That conditions precedent to the policy's becoming effective and contained therein were that, if the insured is not alive or is not in sound health on the date of the issue thereof, or if insured has within two years before the date of issue thereof been attended by a physician for any serious disease or complaint, or, before said date of issue, has had any pulmonary disease, or cancer, then, in any such case, the company may declare this policy void, and the liability of the company in the case of any such declaration, or in case of any claim under this policy, shall be limited to return of premiums paid on the policy.

In this connection it was alleged that at the date the policy was issued the insured was not in sound health, but was in fact suffering from cancer of the rectum at that time and for a considerable period prior thereto; that before the date of issuance of the policy the insured was attended by his physician for a serious disease or complaint, and in fact had a serious disease and complaint, to wit, carcinoma of the rectum, and had received treatment by a physician for this disease within a period of two years prior to said issuance, and that because of these reasons the policy was void. The defendant further alleged that when it discovered these facts it tendered to the plaintiff the return of the premiums paid on the policy. The reply was a general denial.

On the issues so joined trial was had to a jury, which found generally for the plaintiff. Defendant has appealed to this court.

The principal complaints of the defendant are that there is a breach of the conditions in the policy, viz., that the insured was not in sound health on the date of the issue of the policy; that within two years before the date of the issuance of the policy the insured had been attended by a physician for a serious disease or complaint; that the assured before said date had a cancer; that the evidence is insufficient to sustain a verdict for the plaintiff, and that the plaintiff's recovery should be limited to the return of the premiums paid on the policy.

The appellee contends that the policy provides that the defendant may declare the policy void if these conditions are breached, but that it was not sufficient for the defendant under the provisions of the policy to tender a return of the premiums paid on the policy and refuse to pay after the death of the assured; that is, such a tender and refusal is not in and of itself a sufficient pleading that the policy is void. The plaintiff admitted the tender of the premiums by the defendant and her refusal to accept the same. The prevailing rule seems to be that, if the answer tenders a return of the premiums paid and resists the payment of the policy, it is sufficient. *Popowicz v. Metropolitan Life Ins. Co.,* 114 Conn. 333, 158 Atl. 885; *Orsini v. Metropolitan Life Ins. Co.,* 9 N. J. Misc. 407, 154 Atl. 201; *Souza v. Metropolitan Life Ins. Co.,* 270 Mass. 189, 170 N. E. 62.

Appellant contends that certain admissions in the proofs of death furnished by plaintiff to defendant are conclusive against her right to recover on the policy. The proofs of death, being in part a death certificate by Dr. Moritz, were admitted in evidence against the plaintiff as an admission of the statement therein contained as to the duration of insured's illness, and if not contradicted or explained would defeat her right to recover. *Stephens v. Metropolitan Life Ins. Co.,* 190 Mo. App. 673, 176 S. W. 253. But Dr. Moritz was a witness at the trial and testified

fully and stated that he did not know personally the deceased had cancer until 14 days before his death. We think this fact and the other facts and circumstances sufficiently contradict or explain the statements in the certificate.

Appellee also contends that as the insured did not know his condition at the time the policy was delivered there was no breach of the conditions. Whether or not the insured knew that he had or did not have a serious disease is immaterial in this case. There is no merit in this contention.

Also, it is immaterial that his serious condition, if any, developed between the time of the application and the delivery of the policy. If the deceased was actually afflicted with a serious disease at the time of the delivery of the policy, it is a defense to an action on the policy. It is the holding of some courts that if the serious disease arises between the application and delivery of the policy there can be no recovery. However, the rule in this state is that, if such a disease was present at the time of the delivery of the policy, it is fatal to a recovery. *Weddle v. Prudential Ins. Co.,* 130 Neb. 744, 266 N. W. 624.

It is also contended by the appellee that Dr. Thomas had knowledge when he made the examination in October, 1935, of the condition of the deceased and therefore there was a waiver by the company of the condition above mentioned. There was no pleading of waiver and the case was not tried on the theory of waiver, and there is no evidence that Dr. Thomas was in the employ of the defendant at the time of the examination in October, 1935. The results of this examination were privileged. *Stapleton v. Chicago, B. & Q. R. Co.,* 101 Neb. 201, 162 N. W. 644.

This brings us to the pivotal question in this case: Should the motion of the defendant for a directed verdict for it have been sustained? The answer to this question depends entirely on the evidence. It is undisputed that the agent of the defendant solicited the policy in question in September, 1935; that defendant's medical examiner examined the insured on September 28, 1935; that the policy

was delivered on October 14 following, being the date the policy bears; that the insured died of cancer or carcinoma of the rectum on January 17, 1936.

The plaintiff testified in substance that her husband was a pipe fitter in the Burlington railroad shops for 12 years prior to October, 1934; that he was never sick until October, 1935, except in February, 1918, when he had an attack of the flu; that he never suffered ill health or bodily ailments; that he worked in a garage in the summer of 1935 from 8 a. m. until late at night at hard work; that the insured consulted Dr. Peters in September, 1935, for intestinal flu on two occasions; that prior to October 14, 1935, the insured was examined for the insurance by Dr. Thomas, who was the company doctor; that after the middle of October the insured became sick and she went with him to consult Drs. Thomas, Moritz and Wildhaber for advice and treatment; that Dr. Peters was not consulted by the insured in 1934; that the insured consulted Dr. Peters twice in September, 1935, for running off of the bowels, and that she heard the conversation and was present at the second consultation, and that the doctor made no examination and nothing was said as to the insured having a malignant tumor or cancer, and that the doctor at that time gave the deceased medicine; and that her husband worked until the middle of October, 1935; that Dr. Thomas, about the middle of October, 1935, told the insured and the witness that there was a growth of some kind in the rectum or lower colon; told them to see a specialist; that plaintiff and insured went in the middle of October to see Dr. Moritz, who told them the same as Dr. Thomas, and advised them to see about it; that Dr. Thomas said something should be done; then plaintiff and her husband saw Dr. Wildhaber about November 1, 1935; that Dr. Wildhaber did not make a complete examination; he found a small fistula and took care of it, and also found colitis and gave medicine; that insured also saw Dr. Wildhaber several times in November following, and that in December following he recommended the insured to go to a hospital;

that the husband weighed 172 pounds in November and about 140 pounds at the time of his death; that Dr. Rush told her in January, 1936, that an X-ray showed deceased had cancer, and that he died after an operation by Dr. Moritz on January 17, 1936.

Del Whitmore, an employee at the garage where Mr. Hinnenkamp worked during the summer of 1935, stated that the insured was engaged in heavy work; that he worked 9 hours a day, except on certain days when he worked extra hours; that an agent of the defendant solicited Mr. Hinnenkamp for insurance during the summer of 1935.

Elmer Boughten testified that he was a neighbor of the assured; that he had seen him for some 12 or 13 years prior to his death almost daily; that the insured was a very rugged man and worked day and night in many instances at hard work; that he seemed the same during the summer of 1935 that he did prior thereto, and that after he quit working in the garage in the fall of 1935 he worked around the yard splitting wood with an ax.

R. L. Earnhart testified that he was a brother-in-law of the insured; that he had known him all his life; that the insured had worked on a farm, and had been with the Burlington, and had run a portable grinder, and had worked in Chamberlain's Garage; that he saw him several times during the summer of 1935, and that he seemed rugged and in good health, and that he continued in such condition until he quit working in the garage in the fall of 1935.

As a part of the cross-examination of the plaintiff, she stated that a physician's statement of Dr. Moritz was part of the proofs of death submitted by her. This statement was to the effect that the deceased had died of carcinoma of the rectum, and that the duration of the cause to his personal knowledge was 14 days prior to the date of death, but was 4 months from the history of the case given to him. On the reverse side of this death certificate is the following statement by Dr. Moritz: "May 6, 1936. I made a digital examination of rectum in October, 1935, and advised X-ray ex. and suggested Unv. Hosp. Found a lump

and told him he ought to have it investigated. John R. Moritz, M. D."

Dr. Thomas, as physician for the defendant, examined the insured, and after answering questions as to insured's physical condition made the following certificate: "This is to certify that I personally examined at the address given in part A hereof the life proposed for insurance, and saw the signature at the end of part C on the date stated, and am of the opinion that said life is in good health, and that said life's constitution is sound. I find the pecuniary circumstances and hygienic surroundings satisfactory and habits temperate, and the insurance applied for in good faith with the purpose of being continued. I therefore recommend that this application be accepted."

As a witness Dr. Thomas also stated: That he asked the routine questions set out in the application, and that he used the stethoscope and listened to the heart action of the deceased and that this was the entire examination; that either on October 6 or 14 Mr. Hinnenkamp consulted him privately, and that at that time he made a rather hurried general examination and made examination of parts to which the deceased referred and where the pain was; that the deceased gave him a history of pain low in his abdomen and complained of having had diarrhea which he attributed to eating considerable watermelon at a watermelon feed some days before; that he made a digital examination of the rectum and used a speculum, and found attached to the wall of the rectum a polypus about the size of a plum and told the patient that it was rather serious. He advised going to a hospital and consulting a specialist and tried to stress the time element. He never communicated this information to the defendant. Dr. Thomas stated, assuming that the phrase "sound health" means legally, generally the absence of any vice or disease in the constitution of a serious nature or that has direct tendency to shorten life, that it was his opinion that the deceased was not in sound health on October 14, 1935, and that under that definition he was not in sound health on September 21, 1935.

Dr. Moritz examined the deceased about the middle of October, 1935, and stated: That the patient complained of loss of weight, weakness and hemorrhage from the rectum and gave a history of having been seen by his family physician and treated for hemorrhoids and piles; that he made a digital examination which revealed the presence of a mass about three-fourths of an inch in diameter on the left side of the rectum; that he advised patient of the importance of a positive diagnosis and suggested the use of the X-ray, and taking of a section of tissue for microscopic examination, and indicated the danger or possibility of malignancy as one of the causes of the trouble; that he did not see the deceased again until 1936 at the hospital and that he diagnosed the cause of death as ademo-carcinoma of the rectum with secondary metastasis with extension to other abdominal viscera; that this was the same growth that he found in the middle of October; that it was his opinion that this tumorous growth was present in the rectum in September, 1935, and that it was in some phase of growth for perhaps 8 or 10 months prior to October, 1935. He gave the same opinion as Dr. Thomas on the sound health of the deceased in September and October, 1935. It was his opinion that the tumor was malignant in October, 1935, and he made it clear to the patient at that time that the condition was serious.

Dr. Wildhaber examined the deceased about October 14, 1935. He testified: That he made a general physical examination and digital examination of the rectum of the insured; that he found a mass in the rectum and told the patient that it was serious at that time; that he saw the deceased again in December and found the same mass and told the patient that he had cancer of the rectum and would advise an operation; that it was his opinion that the mass in the rectum had been there for a year or year and a half prior to this examination. Dr. Wildhaber stated that in his opinion, assuming the same definition of the phrase "sound health" as above set out, the deceased was not in sound health on September 21 or October, 1935.

Dr. Peters stated: That he saw the deceased about half a dozen times as a patient in 1934, and in the latter part of 1934 he made the diagnosis that deceased had a chronic ulcerated condition of the lower bowel; that he told the patient about his condition; that on September 15, 1935, he again examined the deceased; that the patient complained of a history of cramps of the stomach, diarrhea, passing of blood, loss of weight and being weak, and that he made a general physical examination; that on the 15th or 21st of September, 1935, he made a rectal examination of the deceased, and that the plaintiff was present; that he was unable to get his fingers around the entire mass in the rectum; that he advised the patient and his wife of the condition and they discussed it; that he recommended the University Hospital; that he told them that there was a possibility of it being a cancer; that assuming the same definition of the phrase "sound health," as above set out, he was of the opinion that the insured was not in sound health on September 21 or October 14, 1935.

On rebuttal plaintiff stated: That the deceased had never been treated by Dr. Peters in 1934; that insured had gone to Dr. Peters for treatment concerning the running off of the bowels in September, 1935, and that the doctor gave him some medicine, and about a week later deceased went to him for further treatment and complained that the medicine did not do any good; that Dr. Peters had made no rectal examination but said he would make the medicine a little stronger.

After the plaintiff made her *prima facie* case, the burden of proof was on the defendant to establish one or more of its defenses, that is, that the insured was not in sound health, or had been treated by a doctor for a serious complaint within two years, or that the insured had cancer of the rectum. *Weddle v. Prudential Ins. Co., supra.*

As to the defenses, the trial court instructed the jury as follows:

"The jury are instructed that the defendant in its answer alleges a second defense other than the defense of misrepresentation or fraud.

"You are further instructed that the essential elements of such second defense, which defendant must prove by a preponderance of the evidence to enable it to recover thereunder, may be summarized as follows: (1) That the insured, Louis W. Hinnenkamp, was not in sound health on October 14, 1935; (2) that within two years prior to October 14, 1935, the said Louis W. Hinnenkamp had been attended by a physician for a serious disease or complaint; (3) that said Louis W. Hinnenkamp on or before October 14, 1935, had a cancer or carcinoma of the rectum.

"You are further instructed that if the defendant has proved any one of the foregoing essential elements of its second defense, by a preponderance of the evidence, as pleaded in its answer, then your verdict will be for the defendant."

The jury were properly instructed as to these defenses. There is no complaint as to the instructions of the trial court. The case was, therefore, correctly submitted to the jury unless the evidence conclusively shows the insured was not in sound health at the time of the delivery of the policy, or had been attended by a physician for a serious disease within two years prior to the delivery of the policy, or had cancer or carcinoma of the rectum.

The plaintiff claims that the facts in evidence, upon each of the defenses pleaded, made each of those defenses questions for the jury; also, that the denial by the plaintiff that insured visited Dr. Peters in 1934 and the claim that the doctor was visited in September, 1935, only for the purpose to receive attention for the running off of the bowels, made it a jury question whether or not insured was treated or had been attended by a physician within the two-year period; that the opinions of the doctors, one of whom made the examination of the deceased on his application for insurance; that the insured was not in sound health, are contradicted by the certificate of health of the defendant's doctor, when he made the examination on deceased's application for insurance, and also by the evidence of the deceased's robust health up to October 14, 1935, and

by the appearance of deceased up to that time, and by his general good health, and by the hard labor that he performed, coupled with the additional fact that no witness stated as a fact that the insured had cancer of the rectum in September or October or before that time, but that there was in evidence only opinions as to unsound health and some other conditions.

None of the medical gentlemen testified that the insured had cancer in September or October, 1935, or expressed their opinion to that effect. The evidence is conclusive that the insured died of cancer of the rectum, but Dr. Moritz who performed the operation and who had examined deceased about the time the policy was delivered stated he did not personally know that the insured had such cancer until about 14 days before the death of the deceased. However, Dr. Moritz did testify that he was of the opinion that this tumor was malignant and probably was so at the date of the delivery of the policy, but he was not sure, and that a person might have a tumor which is harmless and that it would later develop into a cancer; that the type of cancer the decedent had was one that worked rapidly. Dr. Wildhaber stated he was of the opinion that the tumor had been present for a year or a year and a half before October, 1935. It thus appears that no doctor suggested until some time after the policy was delivered that the insured had cancer, but suggested an investigation of the tumor. Although the malignant growth developed soon after the delivery of the policy, this does not show, as a matter of law, that the insured was not in good health at the time of the delivery of the policy. *McLaurin v. Mutual Life Ins. Co.*, 115 S. Car. 59, 104 S. E. 327. In the last-cited case, paragraph 2 of the syllabus reads as follows:

"In an action on an insurance policy, wherein the defense was presented that insured was not in good health at the time of the payment of the first premium and delivery of the policy, evidence respecting the development of a cancerous growth soon thereafter *held* not, as a matter of law, to indicate that insured was not at that time in

good health; 'good health' being a generic expression, resting mostly in opinion."

Each of the doctors testified on the assumed definition of the phrase "sound health," as set out above, that it was his opinion that the deceased was not in sound health on September 21 or October 14, 1935. This testimony was not all opinion testimony, as it is based in part on facts observed and examination made; that is, it is not, in its entirety, a mere hypothetical question, as the opinions are based on facts previously observed. But these opinions of the doctors formed from the symptoms previously observed are not equal to positive statements of the facts of the existence of a serious disease or the want of good health at the times of the examinations, or the existence of cancer at those times. It is a well-known fact that symptoms may and do often mislead, and therefore it naturally follows that such conclusions are mere matters of opinion. The lay testimony was all to the effect that the insured appeared well and was stout and vigorous until he took ill about the middle of October, 1935. This apparent condition of the physical system as to health or sickness is beyond question a matter of fact and not entirely devoid of evidentiary strength in view of the other evidence.

It is the general rule in this state that expert evidence, even if all tending one way, is not conclusive upon the court and jury, but the latter may draw their own conclusions from the facts, notwithstanding expert opinion, where the subject is on the border-line between the expert and general knowledge, as in fixing the value of different articles, or of real estate or professional services. But when the opinion is on a highly specialized branch of medical service with respect to which a layman could have no knowledge, and there is no substantial evidence to the contrary and there is no dispute in the expert testimony, it is not a question for the jury. *American Nat. Ins. Co. v. Smith,* 18 Tenn. App. 222, 74 S. W. (2d) 1078. But in the instant case there is evidence to the contrary in the certificate and examination of the medical examiner, even though the lay testimony is disregarded.

The appellant insists that the medical examiner did not make a thorough examination and never discovered this ailment in the assured. This examination was made only about two weeks before the policy was delivered. The examination was by a qualified physician who appeared at the trial as an expert witness. However, he did make an examination and made a written report answering several questions as to the insured's physical condition, and by his own testimony at the trial showed that he used a stethoscope. In the certificate of Dr. Thomas made in September, 1935, he expressed a decided opinion as to the health of the assured and stated in this certificate that the insured's health was good and recommended him to the company. Now the lips of the insured are sealed and a different opinion is expressed. The contention that the medical examiner did not make a complete examination is considered and examined on a similar contention made to the court in *Remfry v. Mutual Life Ins. Co.,* 196 S. W. (Mo. App.) 775, wherein the following language is used:

"In view of these examinations by defendant's medical examiners, in which they found that the deceased was not suffering from the diseases now claimed by the defendant, the evidence on the point was contradictory, and therefore a jury question was presented. *Buchholz v. Ins. Co.,* 177 Mo. App. 683, 160 S. W. 573 (other authorities).

"But defendant urges that, as defendant's medical examiner testified at the trial that he refrained from making a more thorough examination of the insured because of the latter's answers made at the time of the examination and in his application respecting his condition of health, for that reason the medical examiner did not make as careful an examination as he otherwise would have done, and that the latter's report was partially based on the insured's answers made at the time.

"A similar contention was made in the case of *Bruck v. Ins. Co.,* 185 S. W. loc. cit. 756, and in making answer thereto the court said:

" 'But this affords nothing more than the basis for an

argument to be addressed to a jury, and in nowise affects the ruling on the demurrer to the evidence. This testimony could by no means entirely overcome the effect of the certificate of the medical examiner, who had full opportunity to examine the insured, and who did examine him and found nothing physically wrong with him.'"

The general rule stated above as to the weight to be given to the opinions of experts is applicable, and it is for the jury to pass on the question of the assured's health and whether or not he had a serious disease, and upon the evidence in this case we would not be warranted in concluding, as a matter of law, that the only inference that could be drawn from the evidence is that the assured was not in good health or had a serious disease. It is clearly disputed that the insured was treated for a serious disease by a physician within two years before the issuance of the policy, and, therefore, that was also a question for the jury to determine.

While, if we were deciding this case in the first instance, we might be inclined to decide the issues differently, however, this is not a sufficient reason for us to substitute our opinion for that of the jury and to hold that, as a matter of law, there was no question for the jury to decide.

The plaintiff is allowed $150, to be taxed as costs, as attorneys' fees for services in this court.

The judgment of the district court is

AFFIRMED.