ARLAN SCHMIDT, APPELLEE, V. J. C. ROBINSON SEED COMPANY, APPELLANT.

370 N.W.2d 103

Filed July 5, 1985.   No. 84-358.

Lyle E. Strom and Gerald L. Friedrichsen of Fitzgerald, Brown, Leahy, Strom, Schorr & Barmettler, for appellant.

William J. Riedmann and Charles A. Nye of Garvey, Nye, Crawford, Moylan & Riedmann, for appellee.

BOSLAUGH, CAPORALE, SHANAHAN, and GRANT, JJ., and BRODKEY, J., Retired.

GRANT, J.

This is an appeal from a jury verdict for the plaintiff-appellee, Arlan Schmidt, in the amount of $62,924.60. Following the jury verdict, the defendant-appellant, J. C. Robinson Seed Company (hereinafter Robinson), filed a motion for a judgment notwithstanding the verdict or, in the

alternative, for a new trial. Defendant's motion was denied and it timely appealed, alleging the trial court erred in:

1. . . . instructing the jury that it could consider whether the defendant acted reasonably in releasing the acreage under the terms of the contract.

2. . . . instructing the jury that defendant had the burden of proving it did not breach the contract.

3. . . . admitting the opinion testimony of plaintiff's witnesses concerning the effect of shattercane on the seed crop.

4. . . . concluding there was sufficient evidence to raise a question of fact for the jury's determination.

For the reasons set out below we affirm the decision of the trial court.

This action arises out of a cancellation of a contract between the defendant and plaintiff. Schmidt, a tenant farmer, agreed to raise a crop of seed corn for Robinson subject to certain managerial specifications and supervision of Robinson. Robinson agreed to pay Schmidt a set price, under the contract, on the harvesting of the crop.

The contract between the parties contained several provisions which allowed the defendant to cancel the contract, including the following:

4. Release of Acreage. The Company shall have the right to release all or any part of the seed acreage and all or any part of the crop therefrom prior to delivery if one of the following conditions are met:

. . . .

b. In the Company's sole judgment, volunteer corn within or without the seed acreage is excessive and notice thereof is given to Grower within a reasonable time after the first cultivation or prior thereto;

c. At any time prior to delivery, the Company, in its reasonable judgment, determines that Grower has not followed all Company recommendations and directions as to proper and timely planting, cultivation, fertilization, use of herbicides and pesticides and harvesting or where there has not been proper and timely irrigation;

. . . .

e. In the Company's sole reasonable judgment, the prospects for the seed crop are not satisfactory and the Company gives written or oral notice thereof to Grower on or before June 5th of the crop year. The Company shall have the sole right to decide that a stand is good enough to leave for seed production, in which case, such stand, unless thereafter released by the Company, shall be carried through to harvest and Grower shall perform all things required of him in this agreement to produce the best seed crop possible under the circumstances;

f. At any time prior to delivery the Company determines that the seed crop has been subjected to fire, flooding, ponding, insect damage, shattercane or hail damage to such an extent that the crop is killed or been so affected that it should not be used as seed.

In the event of a release of crop or acreage no further services will be performed by the Company on released acreage or released crop, and no payment or compensation of any kind will be made to Grower for such released acreage or crop except as provided in paragraphs 3e, 3f, 3g and 3i. The Company shall retain a lien on the seed crop for advances to producer and for amounts, if any, expended by the Company in performing any operation which is the obligation of Grower prusuant [sic] to paragraph 2j.

Schmidt prepared the ground, planted the seed corn crop, fertilized, and cultivated it according to the direction of Robinson. Robinson's production manager, Glenn Barth, made frequent checks of the field, as was his job, and made three notations about the field up until July 10, 1980, the day it was released. Barth noted, on June 5, 1980, "Some cane [shattercane] coming in 1106 fertile female, Schmidt, but should control with cultivation." On June 24, 1980, Barth noted, "1278 [referring to an adjacent field of a different hybrid] and 1106, Schmidt, stand uneven in places, some severe areas of shattercane, told grower to disk up bad area." Barth testified that the reference to the shattercane showed more concern with the 1278 field and that the area disked was in 1278. Barth also testified that no complaints were made to the

plaintiff about the field or his work until cancellation of the contract.

Robinson claims that the company validly released Schmidt's acreage under paragraph 4f of the contract because it was subject to shattercane to such an extent that the crop should not be used as seed.

There was a great deal of disagreement and conflicting testimony over whether the crop was usable. Robinson argued that the shattercane, which in appearance and size is similar to corn, so infested the fertile female corn in the field that it made effective detasseling unfeasible, thus making the seed impure and unusable as seed corn. Witnesses for both Schmidt and Robinson testified that a field of seed corn contains rows of fertile female corn and rows of fertile male corn, the purpose being to produce a hybrid seed from the female and male. The female grows with a tassel on top containing pollen, which will fertilize the plant through its ears. To produce the hybrid seed described, the tassels of the female are cut or pulled so that their pollen cannot get to the awaiting ears, and the pollen of the nearby fertile male, which also has tassels, fertilizes the detasseled female through its ears. A fertile female plant which fertilizes itself (its own pollen through its own ears) produces inbred corn, and not the desirable hybrid, which, when planted, grows stronger and healthier. Robinson's production manager testified that the company's own standard for detasseling was that no more than one-half of one percent of the female tassels could be left or the amount of inbreeding would be too high to produce seed of the necessary purity for resale.

Schmidt produced evidence to show that the cost of detasseling because of shattercane and unevenness of rows, the unavailability of certain equipment, the unwillingness to salvage part of the crop, and the poor judgment of Robinson's management were the bases of Robinson's decision to cancel.

On appeal we note that the credibility of witnesses and weight to be given their testimony are solely for the consideration of the jury, and unless clearly wrong, a verdict by the jury based on conflicting evidence will not be set aside. *May v. Marijo Corp.*, 207 Neb. 422, 299 N.W.2d 433 (1980).

We consider the appellee's third assignment of error first. Did

the trial court err in admitting the opinion testimony of Schmidt's witnesses concerning the effect of shattercane on the seed crop? The trial court is given large discretion in determining whether or not a witness' qualification to state an opinion has been established, and such discretion will not ordinarily be disturbed on appeal unless there is an abuse of that discretion. *Northern Nat. Gas Co. v. Beech Aircraft Corp.*, 202 Neb. 300, 275 N.W.2d 77 (1979). In this case both of Schmidt's witnesses, Paul Jensen (a farm manager for Schmidt's lessor, and Schmidt's father-in-law) and Jerry McIntosh (a farmer of adjacent land), were asked if, in their opinion, the seed corn could have been detasseled. Both witnesses testified, over Robinson's objection, that they felt the corn could be detasseled. This testimony was based on extensive observations of the field in 1980 and their personal farming experience, which included raising seed corn crops. Both witnesses had dealt with shattercane, and although Mr. Jensen's competence was attacked by Robinson because he had not personally detasseled seed corn, Robinson's production manager testified that they themselves "managed" the detasseling and hired out teachers, who in turn hired schoolchildren to pull the tassels. It was in the court's discretion to determine if Mr. Jensen did not have to personally detassel a row to have an intelligent opinion about whether the crop could be detasseled. The witnesses' testimony was appropriate under Neb. Rev. Stat. § 27-701 (Reissue 1979):

> Rule 701. Opinion testimony by lay witnesses. If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

Robinson presented evidence to rebut the opinions of these witnesses by testimony that, according to Robinson's standards, the corn could not be detasseled sufficiently to produce the necessary purity for sale. The jury had an adequate opportunity to hear and weigh all the testimony concerning the necessary production standards of the defendant and weigh the

opinions of the lay witnesses in light of that testimony. The opinions of both witnesses were rationally based on their perceptions and helpful to a determination of the fact in issue. The trial court did not abuse its discretion in permitting Schmidt's witnesses to testify on this issue.

Robinson admits that its fourth assignment of error—that the trial court should have dismissed the case against it for insufficient evidence—depends on the exclusion of the opinion evidence of Jensen and McIntosh. Since we have determined that evidence was properly admitted, Robinson's fourth assignment of error is without merit.

Robinson's second assignment of error is that the court improperly placed the burden of proving a breach of the contract on Robinson. Both parties agree that the burden of proving conditions precedent in this contract is upon Schmidt, under Neb. Rev. Stat. § 25-836 (Reissue 1979), since Schmidt is trying to enforce the contract. The parties disagree on whether paragraph 4f of the contract, establishing a right of Robinson to release the acreage, is a condition precedent or a condition subsequent. In *O'Brien v. Fricke*, 148 Neb. 369, 27 N.W.2d 403 (1947), we defined a "condition precedent" as a condition which must be performed before the parties' agreement becomes a binding contract, or a condition which must be fulfilled before a duty to perform an existing contract arises. The release of the acreage pursuant to paragraph 4f was not something which had to be performed before the contract became binding or before an existing duty on the part of the defendant was created, but the provisions of Schmidt's actions in planting, fertilizing, etc., were conditions precedent. Those actions fulfilled Schmidt's first delegations under the contract and created a duty on the part of Robinson to perform. Robinson's part of the contract paragraph 4f described a condition subsequent—"one that may occur and if it does" would permit Robinson to avoid its obligation. See Restatement (Second) of Contracts §§ 224, comment *e.*, and 230, comment *a.* (1981). In the case of a condition subsequent, the happening of which defeats the cause of action and thus relieves the party from liability under the contract, the burden of proof rests on the party who asserts the condition. 17A

C.J.S. *Contracts* § 589 (1963); *Fitzmaurice v. Van Vlaanderen Mach. Co.*, 110 N.J. Super. 159, 264 A.2d 740 (1970), *aff'd* 57 N.J. 447, 273 A.2d 561 (1971); *Foutch v. Foutch*, 2 Wash. App. 407, 469 P.2d 223 (1970).

Robinson presented no evidence of nonperformance of a condition precedent, and acknowledged performance by Schmidt in all respects. The burden of proof of conditions precedent was properly on Schmidt, and Schmidt adduced sufficient evidence to satisfy that burden.

Paragraph 4f of the contract allowed Robinson to release certain acres on the occurrence of certain conditions in the seed corn fields. Infestation of the field with shattercane to such an extent as to make the crop unusable is a condition subsequent, and the burden of proving facts sufficient to justify the release of Robinson's obligation was properly placed on Robinson. The trial court did not err in this respect.

Finally, we turn to Robinson's first assignment of error, that the court erred in instructing the jury it could consider whether Robinson acted reasonably in releasing the acreage under the contract.

Instruction No. 6 stated in part:

> The determination by the company that the said crop has been subjected to shattercane to such an extent that the crop is so affected that it should not be used as seed is a determination that must be made *honestly, reasonably, in good faith, and not arbitrarily or capriciously*. To be made honestly, reasonably and in good faith it must take into consideration all the facts, circumstances and conditions that would justify such a determination. This would include but not necessarily be confined to the condition of the shattercane at the time the determination was made.
>
> Therefore, in determining whether defendant's release of the acreage constituted a breach of the contract, the question that you must determine is not whether or not the said crop was subjected to shattercane to such an extent that the crop was so affected that it should not be used as seed. Rather, *you must decide whether the company's determination that that was the fact was a determination that was made honestly, reasonably, in good faith and not*

*arbitrarily or capriciously.*

(Emphasis supplied.) Paragraph 4f of the contract stated:

> 4. <u>Release of Acreage.</u> The Company shall have the right to release all or any part of the seed acreage and all or any part of the crop therefrom prior to delivery if one of the following conditions are met:
>
> . . . .
>
> f. At any time prior to delivery *the Company determines* that the seed crop has been subjected to . . . shattercane . . . to such an extent that the crop is killed or been so affected that it should not be used as seed.

(Emphasis supplied.) Robinson agrees that the case law in Nebraska interjects the standard that the determination must be made "honestly, in good faith, not arbitrarily or capriciously," but submits that the addition of "reasonably" into the standard is prejudicial to Robinson, in that under the contract it should have been able to have made an honest decision that was not reasonable without incurring liability. Although Robinson's argument has some appeal, after an extensive review of the contract we have found that there is some ambiguity concerning whether a reasonableness standard should be imposed on Robinson in its release of the acreage. We note that in paragraph 3a(ii) the contract provides for exclusion of payment where:

> (ii) Each acre or part thereof which has been subjected to fire, flooding, ponding, insect damage or shattercane to such an extent that the crop is killed or been so affected that it should not be used as seed. The Company shall determine in its sole reasonable discretion whether the crop has been so affected from such causes.

Paragraph 3a(ii) is directed to Robinson's right to refuse payment for acreage affected by shattercane, as determined in Robinson's "sole reasonable discretion." Paragraph 4f is directed to Robinson's right to release acreage affected by shattercane, based on Robinson's determination. Both paragraphs address the same problem—the effect of shattercane on the seed corn field. The contract is ambiguous in that refusal of payment is to be based on Robinson's reasonable discretion while release of acreage is to be based on Robinson's

unfettered determination. We note also that the concept of reasonableness is reflected in paragraphs 4b, c, d, and e. To the extent this contract is ambiguous, in that it is not clear whether a reasonableness standard was intended to apply in the release of acreage under 4f, we apply the rule stated in *Sacher v. Taco Grande of Iowa, Inc.*, 210 Neb. 122, 125-26, 313 N.W.2d 257, 259 (1981), "[A] contract will be construed most strongly against the party preparing it when there is a question as to its meaning." This contract, prepared by the defendant, is construed to include a reasonableness standard for release under paragraph 4f. Instruction No. 6 given by the court reflected that construction and was appropriate.

Having reviewed all the assigned errors of Robinson, we find none of them warrant setting aside the verdict of the jury, and we affirm.

AFFIRMED.