RICHARD E. DONALDSON AND DORCAS DONALDSON, HUSBAND AND WIFE, APPELLEES, V. FARM BUREAU LIFE INSURANCE COMPANY, APPELLANT.
440 N.W.2d 187

Filed May 12, 1989.   No. 87-648.

Marvin O. Kieckhafer, of Kay and Kay, for appellant.

Donald W. Pederson and Terrance O. Waite, of Murphy, Pederson, Piccolo & Pederson, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

Plaintiffs-appellees, Richard E. Donaldson, a physician, and his wife, Dorcas Donaldson, a registered nurse, seek a declaration that defendant-appellant, Farm Bureau Life Insurance Company, is contractually obligated to provide them with health insurance coverage. The district court ruled that such a contract of insurance does indeed exist between the Donaldsons and Farm Bureau. Farm Bureau has appealed, asserting, in summary, that the district court erred in finding that the Donaldsons had performed all conditions precedent to the formation of the contract, thereby creating duplicate coverages. We reverse and remand with direction.

Prior to the events in question, the Donaldsons purchased

and had in force and effect health insurance coverage through a group policy issued by Blue Cross-Blue Shield of Nebraska. Because Blue Cross-Blue Shield raised its premium, Mrs. Donaldson contacted the local Farm Bureau manager and agent, Douglas Collins, with whom the Donaldsons had placed other insurance, to see if "as good a coverage for a lesser rate" could be obtained. As a consequence, Collins met with the Donaldsons at their home during the evening of February 8, 1984.

During the course of that meeting, an application for enrollment in a $500 deductible Farm Bureau group health plan was completed. The application recites that the Farm Bureau coverage was to replace a Blue Cross group policy with a like deductible and that the replacement was to take effect on March 15, 1984. The application further states that the Farm Bureau certificate was to cover Dr. Donaldson as the applicant, his wife, and his four children. At the conclusion of the meeting, both Dr. and Mrs. Donaldson signed the application, which cautions that coverage would take effect "only when the application is approved by" Farm Bureau and that a "contract will not be offered when there is other major medical or hospital surgical coverage in effect, which is not being replaced, or whenever there is a duplication of benefits which would result in excessive coverage." It also appears that Dr. Donaldson paid the anticipated first month's premium.

In response, Farm Bureau prepared a certificate of insurance to become effective March 15, 1984, and forwarded it to Collins for delivery to the Donaldsons. Because the certificate was to become effective in the future, it was accompanied by a document to be signed by Dr. Donaldson attesting that the insurability of those proposed for coverage had not changed and that there had been no medical treatment since the date of the original application except for such treatment as might be detailed in the attestation document described above. Farm Bureau also prepared and forwarded to Collins a delivery memorandum which directed Collins to deliver the policy only if he collected an additional sum, as the monthly premium was somewhat higher than anticipated, and the previously described attestation document was executed. The delivery memorandum

advised that the certificate was not in force, and instructed that it not be delivered if there had been a change in insurability since the date of the original application. If no change in insurability had occurred, the coverage would be in force upon obtaining the attestation of continued insurability. The delivery memorandum also limited the delivery period to April 8, 1984, instructing Collins not to deliver the certificate after that date unless authorized to do so by Farm Bureau's underwriting department.

On February 28, 1984, Collins wrote the Donaldsons a letter which stated that their application for insurance had been approved, and identified the certificate number Farm Bureau had assigned. The letter also advised that the "effective date of this new policy is March 15, 1984. You may wish to make arrangements of previous policies around this date." The letter further advised:

> The above application has been approved for issue and the certificate will be mailed to you a week before the effective date of ___3/15/84___ .

> This approval is subject to the continuing insurability of all persons proposed for coverage at the time this certificate is delivered.

### UNDERWRITING DEPARTMENT

Notwithstanding the representation in the letter that the certificate would be mailed, Collins testified it was both his personal policy and that of Farm Bureau that certificates evidencing coverage be delivered in person. This personal service enabled him to discuss the coverage, answer questions, and obtain the execution of such other documents as might be required. However, Collins did not succeed in making contact with the Donaldsons to effect delivery of the policy and obtain execution of the attestation of continued insurability, and Farm Bureau ultimately treated the transaction as one in which a policy had not been issued. Farm Bureau issued a check to Dr. Donaldson returning the amount he had paid toward the first month's premium, but Dr. Donaldson has not cashed the check. So far as the record reveals, the Donaldsons tendered no further premiums to Farm Bureau.

The Donaldsons did not cancel the Blue Cross-Blue Shield

coverage as of March 15, 1984. In fact, the Blue Cross-Blue Shield premiums were paid without interruption, so that there has been continuous Blue Cross-Blue Shield coverage at least through April 21, 1987, the date of the district court trial. Mrs. Donaldson testified that while she did not intend to obtain double coverage, she also did not intend to terminate the Blue Cross-Blue Shield coverage until the end of March, as she wanted a 15-day overlap in coverage. Mrs. Donaldson explained that the April Blue Cross-Blue Shield premium was paid through "our secretary" toward the end of March. When asked whether such payment "turn[ed] out to be a mix-up," Mrs. Donaldson replied that it "turned out to be a godsend."

During the third week of March 1984, examination revealed a half-centimeter calcification in Mrs. Donaldson's right breast of a nature that could not be felt except as she lay on a hard x-ray table. A biopsy of the calcification was done on Thursday of that week. On or about the first of April, Mrs. Donaldson was told the biopsy revealed the presence of cancer and that she was in need of immediate surgery. Surgery was performed a few days later.

Regardless of the fact that Collins' February 28 letter advised the Donaldsons as to the certificate number Farm Bureau had assigned, Mrs. Donaldson called Collins' office when she entered the hospital for the biopsy, variously described as between March 20 and March 27, to obtain that information. Sometime later in April, Mrs. Donaldson learned that Blue Cross-Blue Shield had paid the hospital bills and that Farm Bureau had not. Dr. Donaldson underwent a heart transplant on October 14, 1986.

An action for declaratory judgment under the provisions of Neb. Rev. Stat. §§ 25-21,149 et seq. (Reissue 1985) is sui generis, *Buhrmann v. Buhrmann,* 231 Neb. 831, 438 N.W.2d 481 (1989), and *Caeli Assoc. v. Firestone Tire & Rubber Co.,* 226 Neb. 752, 415 N.W.2d 116 (1987); whether such an action is to be treated as one at law or one in equity is to be determined by the nature of the dispute, *Boren v. State Farm Mut. Auto. Ins. Co.,* 225 Neb. 503, 406 N.W.2d 640 (1987). The essence of the dispute before us sounds in contract. That being so, the action is to be treated as one at law. *Fisbeck v. Scherbarth, Inc.,* 229

Neb. 453, 428 N.W.2d 141 (1988). See, also, *Hemenway v. MFA Life Ins. Co.*, 211 Neb. 193, 318 N.W.2d 70 (1982). This court treats the determination of factual issues in such a declaratory judgment action which was tried without a jury in the same manner as any other action at law; accordingly, the findings of the trial court have the effect of a verdict and will not be set aside unless clearly wrong. *Jelsma v. Scottsdale Ins. Co.*, 231 Neb. 657, 437 N.W.2d 778 (1989); *Gard v. Pelican Publishing Co.*, 230 Neb. 656, 433 N.W.2d 175 (1988); *Beatrice Nat. Bank v. Southeast Neb. Co-op*, 230 Neb. 671, 432 N.W.2d 842 (1988). However, regardless of the scope of our review regarding questions of fact, this court has an obligation to reach an independent conclusion concerning questions of law. *Jelsma v. Scottsdale Ins. Co., supra*; *Beatrice Nat. Bank v. Southeast Neb. Co-op, supra*; *Fisbeck v. Scherbarth, Inc., supra*.

Farm Bureau claims the Donaldsons failed to meet three conditions precedent to the formation of a contract of insurance; namely, that they cancel their Blue Cross-Blue Shield coverage, be insurable at the time of the delivery of the Farm Bureau certificate, and pay the difference between the anticipated and actual first month's premium.

We have said that in the law of contracts, a " 'condition precedent' [is] a condition which must be performed before the parties' agreement becomes a binding contract, or a condition which must be fulfilled before a duty to perform an existing contract arises." *Schmidt v. J. C. Robinson Seed Co.*, 220 Neb. 344, 349, 370 N.W.2d 103, 107 (1985), citing *O'Brien v. Fricke*, 148 Neb. 369, 27 N.W.2d 403 (1947). In short, in contract law a condition precedent is a fact which must come into existence or an event which must take place before a right to performance arises.

The principle has been applied to contracts of insurance. E.g., *Hemenway v. MFA Life Ins. Co., supra* (conditions contained in "conditional receipt" met; thus, insurance coverage held to exist); *Ortega v. North American Co. for L. & H. Ins.*, 187 Neb. 569, 193 N.W.2d 254 (1971) (condition of continued insurability between time of application and delivery of policy met; thus, coverage held to exist); *Adolf v. Union Nat.*

*Life Ins. Co.*, 170 Neb. 38, 101 N.W.2d 504 (1960) (refusal of insurer to accept risk because applicant failed to meet condition that he be insurable resulted in no contract of insurance notwithstanding insurer's acceptance of first month's premium and issuance of conditional receipt); *Hinnenkamp v. Metropolitan Life Ins. Co.*, 134 Neb. 846, 279 N.W. 784 (1938) (conditions of insurability at time of application and delivery of policy met; thus, insurance coverage held to exist); *Weddle v. Prudential Ins. Co.*, 130 Neb. 744, 266 N.W. 624 (1936) (condition of insurability at time of delivery of policy met; thus, insurance coverage held to exist).

We have also held that where a contract is executed but its effectiveness is dependent upon the fulfillment of an agreed condition before it can become a binding contract, such contract cannot be enforced unless the condition is performed. *Chadd v. Midwest Franchise Corp.*, 226 Neb. 502, 412 N.W.2d 453 (1987); *K & K Pharmacy v. Barta,* 222 Neb. 215, 382 N.W.2d 363 (1986). See *Frenzen v. Taylor, ante* p. 41, 439 N.W.2d 473 (1989).

The clear meaning of the caution included in the application signed by the Donaldsons is that Farm Bureau would not insure the Donaldsons if, among other things, such "major medical or hospital surgical coverage" the Donaldsons already had was not being replaced by the Farm Bureau certificate. While the Blue Cross-Blue Shield policy issued to the Donaldsons was not put in evidence, the record nonetheless leaves no question but that at the time the Donaldsons applied for coverage with Farm Bureau, all the parties intended that the Donaldsons were to cancel the very Blue Cross-Blue Shield policy they continued in force and that such cancellation was a condition precedent to the extending of coverage by Farm Bureau.

However, the Donaldsons in effect argue that Collins' letter waived that condition by advising them that Farm Bureau had approved their application; by promising that the certificate would be mailed the week prior to the effective date of the coverage, but not delivering the certificate at all; and by writing that they might "wish to make arrangements of previous policies around this date," rather than directing that they must effect cancellation by March 15, 1984.

Waiver has been defined as a voluntary and intentional relinquishment or abandonment of a known existing legal right or such conduct as warrants an inference of the relinquishment of such right. *Jelsma v. Scottsdale Ins. Co.,* 231 Neb. 657, 437 N.W.2d 778 (1989); *Farmers State Bank v. Farmland Foods,* 225 Neb. 1, 402 N.W.2d 277 (1987). We recently applied that concept to a life insurance contract in *Bohannon v. Guardsman Life Ins. Co.*, 224 Neb. 701, 400 N.W.2d 856 (1987), holding therein that the insurer's demand and acceptance of the succeeding month's premium with knowledge that the preceding month's premium had not been paid waived the policy provision empowering the insurer to declare a forfeiture because of the earlier nonpayment.

Obviously, if the district court were to have concluded that Farm Bureau did not waive the condition requiring cancellation of the Blue Cross-Blue Shield coverage, then judgment would have to have been entered against the Donaldsons and in favor of Farm Bureau, for the condition was not fulfilled. The evidence is such, however, that the district court as the finder of fact reasonably could find that Farm Bureau's failure through Collins to mail or otherwise deliver the certificate during the week preceding March 15, 1984, and Collins' advice that the Donaldsons might "wish to make arrangements of previous policies around" March 15, waived that date as the precise day by which cancellation must have been effected, for time is not of the essence when a contract does not expressly so provide and the conduct of the parties shows they do not so consider it. *Able Electric Co. v. Vacanti & Randazzo Constr. Co.*, 212 Neb. 619, 324 N.W.2d 667 (1982); *Richards v. Bycroft*, 197 Neb. 478, 249 N.W.2d 743 (1977). The district court was clearly wrong, however, in its implicit finding that Farm Bureau's failure to deliver the certificate and Collins' choice of language as to when cancellation must have been accomplished waived the condition in its entirety, for there is nothing in the record which supports a finding that Farm Bureau intentionally relinquished the requirement that the existing Blue Cross-Blue Shield coverage be canceled, or which establishes conduct which warrants an inference of such relinquishment. As we have recently said, in order to establish a waiver of a legal right, there

must be clear, unequivocal, and decisive action showing such a purpose, or acts amounting to an estoppel. *Jelsma v. Scottsdale Ins. Co., supra*. Given the language of the application, the clear import of Collins' February 28 letter is that Farm Bureau's acceptance of the Donaldsons' offer to purchase insurance, *Hemenway v. MFA Life Ins. Co.*, 211 Neb. 193, 318 N.W.2d 70 (1982), was contingent upon the cancellation of the existing Blue Cross-Blue Shield coverage. The evidence and conduct of Farm Bureau establishes only that it waived March 15, 1984, as the precise date by which the Donaldsons were required to cancel their Blue Cross-Blue Shield coverage. Where a contract is silent with respect to the time of performance, a reasonable time for performance will be presumed or implied by law. *Gustav Thieszen Irr. Co., Inc. v. Meinberg*, 202 Neb. 666, 276 N.W.2d 664 (1979). See, also, *Frenzen v. Taylor, ante* p. 41, 439 N.W.2d 473 (1989). Thus, the Donaldsons had a reasonable time within which to perform that condition precedent. Whatever a reasonable time might be, it is not as long as the 3 years the Donaldsons continued their Blue Cross-Blue Shield coverage.

The foregoing analysis makes a consideration of the remaining claims of Farm Bureau unnecessary.

The judgment of the district court is reversed and the cause remanded with the direction that the Donaldsons' petition be dismissed.

REVERSED AND REMANDED WITH DIRECTION.

WHITE, J., dissenting.

I agree with the majority in finding that a contract for insurance was formed between the parties when Collins sent the letter to the Donaldsons notifying them that their application had been approved. I disagree, however, as to the determination that the condition of terminating prior policies of insurance was not waived in its entirety.

As outlined in the majority opinion, the application for insurance filed with Farm Bureau cautioned that coverage would be effective "only when the application is approved" and that a "contract will not be offered when there is other major medical or hospital surgical coverage in effect, which is not being replaced, or whenever there is a duplication of benefits

which would result in excessive coverage." The record is conclusive that the Donaldsons did not cancel their previous insurance policy. However, this finding alone is not determinative of the present action. Instead, we need to consider whether cancellation of the Donaldsons' preexisting health insurance coverage was a condition precedent to formation of a contract between the Donaldsons and Farm Bureau.

As stated by the majority, a condition precedent is a fact which must come into existence or an event which must take place before a right to performance arises. In this action, Farm Bureau evidently established as a condition precedent to formation of a contract of insurance the requirement that any applicant first terminate existing insurance coverage before an application would be approved. However, any such condition was waived when Collins sent the letter to the Donaldsons stating that "the above application has been approved."

The majority agrees that this condition precedent was waived by acceptance of the Donaldsons' application for insurance. However, the majority concludes that Farm Bureau merely waived March 15, 1984, as the precise date the preexisting insurance had to be canceled, not the condition in its entirety, and that therefore a reasonable time for performance was to be implied. I disagree with this interpretation.

The issuance by the insurer of a policy with knowledge that the "other insurance" clause is violated by the existence of a prior policy constitutes a waiver of such a breach. 9 G. Couch, Cyclopedia of Insurance Law § 37B:43 (rev. ed. 1985). Here, Collins' letter stated that the Donaldsons' application for insurance was approved, and advised that the "effective date of this new policy is March 15, 1984. You may wish to make arrangements of previous policies around this date." While language in the application required the prior policies to be terminated before a policy would be offered, this subsequent letter to the Donaldsons clearly waived this requirement. Collins knew that the Donaldsons still had existing insurance. He even refers to this fact in the February letter he sent to the Donaldsons. The language "You may wish to make arrangements of previous policies around this date" can be

reasonably construed to intimate that an insured is free to cancel or not cancel existing insurance, thereby negating the mandatory cancellation language contained in the application. If the agent who takes the application is informed of another policy, the insurer, by thereafter accepting the application and issuing the policy, is estopped from setting up a condition prohibiting other insurance, since the knowledge of the agent is the knowledge of his principal. 4 G. Couch, Cyclopedia of Insurance Law § 26A:108 (rev. ed. 1984).

I would affirm the judgment of the district court.