I. H. MCRAE ET AL., APPELLANTS, V. MERCURY INSURANCE COMPANY, APPELLEE.

FILED MARCH 23, 1934. No. 28808.

*Cleary, Horan & Skutt*, for appellants.

*Montgomery, Hall & Young, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and BEGLEY, District Judge.

GOSS, C. J.

This was an action to recover on an automobile fire insurance policy. At the conclusion of the evidence defendant moved for an instructed verdict or for a dismissal. The court entered a dismissal. Plaintiffs appealed.

On September 20, 1929, plaintiffs bought of Marmon Brothers, Inc., of Kansas City, a Marmon sedan. They did not pay in cash the entire consideration. The unpaid balance was financed by Atlas Acceptance Corporation, which purchased the policy from defendant through Oppenheimer Brothers, insurance agents. The policy was for $1,275, and covered both fire and theft. The mortgage evidencing the interest of Atlas Acceptance Corporation was for $845.60, to secure four equal notes due each three months beginning January 1, 1930. The total premium was $16.07. July 4, 1930, the car took fire while being driven and was largely destroyed. When traded in for another car an allowance of $316 was made on it.

The defense is that the policy was canceled November 25, 1929, in accordance with a provision in the policy that it might be canceled on five days' written notice, mailed to the address of the assured. The evidence shows that the chattel mortgage authorized the mortgagee or assigns to keep the property insured covering loss from fire or theft until all of the notes and interest were fully paid. On November 25, 1929, Oppenheimer Brothers, as agents for defendant, by registered letter, notified plaintiffs of the cancelation of the policy. The insurance had been obtained by the Atlas Acceptance Corporation and the premium for it was paid by this corporation and in-

cluded in plaintiffs' notes. When the policy was canceled, the unearned premium, amounting to $13.18, was returned to the corporation and was by it credited to plaintiffs on its books, where, for its own convenience, it kept account of plaintiffs' notes and insurance. When the policy was canceled the acceptance corporation obtained a policy, to protect its interests only, at a premium cost of $8.99, which it charged to plaintiffs' account, leaving a balance of $4.19 return premium to which plaintiffs would be entitled when they made final settlement on their notes. The unearned premium was returned to the corporation rather than to plaintiffs because Oppenheimer Brothers, the agents, had dealt with the corporation and not with plaintiffs.

Plaintiffs received notice November 25, 1929, that the policy had been canceled. Not until January 15, 1930, did they take any steps or show any interest in the matter. Then, for the first time shown in the evidence, they manifested interest to the extent of a letter to the insurance agents calling attention to the fact that they had "never received the unearned premium of 10 months due on this cancelation." This letter was referred to the acceptance corporation, and on January 17, 1930, it advised plaintiffs by letter that their account had been credited with $4.19, return premium. To this plaintiffs answered under date of January 18, 1930, referring to the policy as "canceled" on November 25, 1929, analyzing the insurance premiums and the time the policy was in force, arriving at the conclusion there was $13.39 return premium due them and asking for a check for that sum. January 20, 1930, the acceptance corporation replied that the return premium was $13.18 but that $8.99 of this was invested in a new policy to protect the interests of the acceptance corporation, as mortgagee, leaving a balance of $4.19 due plaintiffs, and stating that the reason they were not paid this amount was due to the fact that plaintiffs did not pay the insurance in cash but it was included in their notes and would not be paid until the notes were paid. Plaintiffs

seemed satisfied with that explanation. No further communications were had on the subject. On April 4, 1930, they paid the note due April 1, 1930. On July 3, 1930, they gave a check for the note due July 1, 1930. When the automobile burned on July 4, 1930, they stopped payment on that check, but later in July plaintiffs paid the note due July 1 and at the same time the note due October 1, 1930, was discounted and paid by plaintiffs. This was probably done to release the acceptance corporation lien so the damaged car could be traded in by plaintiffs on a new car. From January 20, 1930, indeed, from the receipt of the notice of cancelation in November, 1929, plaintiffs apparently acquiesced in the fact of cancelation. From January 20, 1930, to the date of the fire they appeared to be satisfied with the adjustment of the return premium by the acceptance corporation. During this period no notice was brought home to defendant that they repudiated the cancelation. Defendant pleaded that, by their conduct, plaintiffs accepted the notice of cancelation as sufficient, waived strict compliance with the terms of the policy, waived a tender of the return of the premium, and are now estopped to assert that the policy was not canceled or to assert that the policy was in force when the fire occurred.

The questions of law are whether the notice of cancelation was sufficient to perform that office, and whether, if not sufficient, plaintiffs have waived the point or are estopped to assert that the policy was in force when the fire occurred.

The notice, dated November 25, 1929, did not state that the policy would be canceled in five days, as provided by the policy, but stated that the policy "is canceled in accordance with its terms as of November 25, 1929."

When a written notice is given the insured stating that the policy is already canceled, it will be considered as if it stated that the policy will be canceled in five days, where the policy has a provision to allow five days for the notice of cancelation to become operative. *Hanover Fire Ins. Co.*

*v. Wood,* 209 Ala. 380; *Davidson v. German Ins. Co.,* 74 N. J. Law, 487; *Grant Lumber Co. v. North River Ins. Co.,* 253 Fed. 83.

"An agreement for an immediate cancelation without giving five days' notice can be made, and this can be shown by acts and conduct as well as by direct words." *Home Ins. Co. v. Chattahoochee Lumber Co.,* 126 Ga. 334. The same principle applies to a life insurance policy. *Missouri State Life Ins. Co. v. Hill,* 109 Ark. 17.

Acquiescence in a cancelation notice will operate to cancel the policy and will work an estoppel to assert that the policy is still in force. *Hopkins & Cochran v. Phoenix Ins. Co.,* 78 Ia. 344; *Hillock v. Traders Ins. Co.,* 54 Mich. 531; *Missouri State Life Ins. Co. v. Hill,* 109 Ark. 17.

Plaintiffs were in no way misled by the insurance company. Their dealings were almost entirely with the acceptance corporation. They were not deceived by that corporation, which is not a party to the action. When the policy was canceled, the mortgagee protected its interest by the coverage of a new policy. At least as early as January 20, 1930, the mortgagee notified plaintiffs it had spent $8.99 of the return premium in a policy covering its insurable interest and held the balance of $4.19 to await final payment on the notes. Plaintiffs appear to have acquiesced in the cancelation but sought to get back all premiums returned. We think the trial court was right in deciding that they had waived the defects, if any, in the matter of the cancelation of the policy, and that their conduct was inconsistent with their claim that the policy was in force when the fire occurred.

The judgment of the district court is

AFFIRMED.

BEGLEY, District Judge, died March 4, 1934, and took no part in the decision.