RAY SANKS ET AL., APPELLEES, V. ST. PAUL FIRE & MARINE INSURANCE COMPANY, APPELLANT.

FILED JUNE 12, 1936. No. 29575.

*Ziegler & Dunn* and *William Stalmaster*, for appellant.

*Wear, Boland & Nye, contra.*

Heard before GOSS, C. J., ROSE and DAY, JJ., and ELDRED and TEWELL, District Judges.

TEWELL, District Judge.

This action was begun in the district court for Douglas county. The petition contains two causes of action. The case was tried to a jury, and from a verdict and judgment in favor of plaintiffs in both causes, the defendant appeals.

Each cause of action is based upon an insurance policy. Each policy was issued on January 12, 1934, to the plaintiffs Sanks and Gayman by defendant through Frank M. Lepinski, as agent of the defendant. Each policy purports to insure Sanks and Gayman against loss of a truck and trailer by fire or theft, the policy in the first cause being upon an International A 3 truck and the policy in the second cause being upon an International B 3 truck. The plaintiffs Sanks and Gayman were joint owners of both trucks and used them in doing hauling for hire, and the plaintiff, International Harvester Company of America, hereinafter referred to as the Harvester Company, had an interest in both trucks and in the policies, by virtue of chattel mortgages and provisions in the policies. Except as to the de-

scription of property described in each policy, the two policies are identical in form, each being made through the use of printed forms furnished to Lepinski by the defendant. The A 3 truck and trailer involved in the first cause was destroyed by fire about March 5, 1934, while being used to haul baled alfalfa hay. Loss by theft of parts of the B 3 truck and trailer involved in the second cause about March 2, 1934, is alleged in the second cause.

By its answer the defendant denied that either of said policies had ever gone into force and effect on account of a provision in each prohibiting other insurance, and alleged the existence of insurance against loss by fire and theft by policies issued by Federal Union Insurance Company. The defendant further alleged that, if said policies became effective, they were canceled by the defendant through notice to Lepinski by the defendant on February 20, and February 27, 1934, prior to any loss, it being alleged that such notice of cancelation was sent by the defendant, without knowledge of facts that prevented such policies from being in effect.

The evidence discloses that about November 11, 1933, the plaintiffs Sanks and Gayman applied to Lepinski for insurance upon the above mentioned trucks. Lepinski was the local agent in Omaha of several different insurance companies, including the defendant. Lepinski then issued policies of insurance upon these trucks in the Federal Union Insurance Company. Sanks and Gayman then made a note dated November 11, 1933, to General Securities Company, a corporation, of which Lepinski was the managing officer, for an advance by that company of a part of the premium upon such policies, and paid Lepinski the balance of the premiums thereon in cash. In the early part of January, 1934, notice of cancelation of these policies was sent to Lepinski by the Federal Union Insurance Company, and Lepinski thereupon debited the amount of the short rate premium upon these two former policies to Sanks and Gayman upon his account with them, and the next day issued the two policies sued upon. About February 15, or 16,

1934, Sanks and Gayman made further cash payment to Lepinski upon their account with him. At the time of this subsequent payment by Sanks and Gayman, no change of any kind was made in the policies sued upon, and for aught that the evidence shows, no notice of such further payment by Sanks and Gayman was sent to the defendant. The defendant did not at any time extend credit for premium to Sanks and Gayman, but at all times looked only to Lepinski to account for the premiums. The evidence conflicts as to whether or not Sanks or Gayman knew, prior to the losses involved, that the policies in Federal Union Insurance Company had been canceled and the two policies sued upon issued.

The defendant contends that, if the plaintiffs were not notified of the cancelation of the prior policies and the issuance of the policies sued upon, the prior policies were either in effect at the time of the loss and the policies sued upon not in effect on account of the prohibition against other insurance, or that Lepinski was the agent of the plaintiffs to keep the trucks insured and to receive notice of cancelation of the policies sued upon, and further contends that notice of cancelation of the policies sued upon was given to Lepinski by the defendant prior to the loss. The evidence is conclusive to the effect that Lepinski intended to cancel the former policies and did all acts required to accomplish such cancelation, unless notice to the plaintiffs was necessary and not given. The plaintiffs accepted the benefit of the unearned premium upon the former policies and made further payment to Lepinski upon their account with him after the issuance of the policies sued upon and before the loss, and after the loss brought this action upon the substituted policies. Lepinski, in issuing the former, as well as the substituted policies, chose which of the various companies he represented should carry the insurance, advanced any portion of the premiums that plaintiffs did not pay in cash, and at the time of the issuance of the policies sued upon knew all facts connected with the attempted cancelation of the former policies. Under such

a state of facts, we deem it immaterial whether or not Lepinski was authorized to receive notice of cancelation of the former policies. Lepinski was agent of Sanks and Gayman for some purposes, and the acts of Sanks and Gayman under the facts stated so ratified his acts in canceling the former policies as to make such cancelation effective as of the date of such attempted cancelation. 32 C. J. 1254. Furthermore, Lepinski with full knowledge of all facts relating to the existence or nonexistence of the former policies in good faith issued the policies sued upon, and this knowledge existing at the time of the issuance of the policies sued upon and being directly connected and interwoven with his acts as agent of defendant was imputed to the defendant. 32 C. J. 1325. With such imputed knowledge the defendant issued the policies sued upon, has retained the premiums thereon, and has waived the provisions of the policies relating to prior insurance. 32 C. J. 1325.

Defendant contends that, if the policies sued upon became effective, they were canceled by letters written by the defendant to Lepinski. The complete body of the letter of February 20, 1934, reads as follows:

"Re: Policy AO 2518—M. Gayman & A. Sanks.

"It comes to our attention that the above risk is used in commercial hauling. Inasmuch as this is a classification we are not writing at the present time, we must ask that you relieve us of liability immediately upon receipt of this letter."

The letter of February 27, 1934, reads as follows:

"Re: Policy AO 2518—M. Gayman & A. Sanks.

"On February 20th we wrote you asking that you kindly relieve us of liability under policy AO 2518, and in writing this letter we inadvertently overlooked the fact that we were covering the same assured under policy 2519, in view of which, we would appreciate it if you would kindly return this policy for cancelation along with 2518."

A clause in each policy sued upon provides that the policy may be canceled by the defendant giving to the assured five

days' written notice of cancelation, with or without tender of unearned premium, and that notice of cancelation shall state that the unearned premium, if not tendered, will be refunded on demand. Except as a right of cancelation of an insurance contract is provided for by statute, or reserved in the contract, neither the insured nor the insurer can effect a cancelation without the consent of the other, and when provision for cancelation is made without the consent of one party to the contract, such cancelation can be effected only by a strict compliance with the terms and conditions provided therefor by the contract and by statute. *German Ins. Co. v. Rounds*, 35 Neb. 752, 53 N. W. 660; *Artificial Ice Co. v. Reciprocal Exchange*, 192 Ia. 1133, 184 N. W. 756; 32 C. J. 1245.

The above quoted letters did not state that the unearned premium would be refunded on demand, and in other ways did not comply with the provisions of the policies relating to cancelation and did not effect a cancelation. The trial court would have been justified in instructing the jury that both policies sued upon were, as a matter of law, under the evidence, in force at the time of the loss involved in each cause.

Another contention made by the defendant is that the trial court erred in allowing the plaintiffs to prove the reasonable value of a tarpaulin used by plaintiffs to cover the load upon the A 3 Truck involved in the first cause of action, and in failing to exclude the reasonable value of such tarpaulin from the permitted amount of recovery, upon the first cause. The policy provides insurance against loss by fire of *"the automobile herein described and the equipment usually attached thereto."* (Italics ours.) Lepinski, at the time the policies sued upon were written, and officers of the defendant itself prior to the loss, knew that the truck described in the first cause was being used to do commercial hauling. No roof existed over the space in the trailer provided for its load. A tarpaulin, under such a state of facts, is a very commonly used article, and in many instances necessary as a condition to securing contracts to do

hauling for hire. The intention of the parties to a written contract of insurance is primarily to be sought in the language of the instrument itself, but if the intent does not clearly appear from the language itself, the court, in construing the contract, will take into consideration other matters, such as surrounding circumstances, the subject-matter of the contract, the business in which all parties were engaged at the time the contract was made, and the purpose and object of the contract, and will construe the contract, when possible, so as to effectuate the purpose of the contract, which is insurance against loss. 32 C. J. 1148. In this case the tarpaulin involved was stretched over the load at the time of the loss. Under the circumstances surrounding the parties at the time the contract was written and at the time of the loss, no provision in the contract to the contrary appearing, the tarpaulin was included within equipment usually attached to the property specifically described in the policy, and no error was committed in allowing its reasonable value to be included within the amount of the loss.

To the second cause, namely, that which alleges a loss by theft, the defendant by its answer pleads, and now claims, that it did not become liable therefor on account of the failure of the plaintiffs to use diligence to guard against such theft, after the property had been damaged. The evidence discloses that at about 5 o'clock in the morning of March 2, 1934, the plaintiff Sanks was driving the B 3 truck involved in the second cause near Chicago, Illinois, and that such truck and trailer went into a ditch. The trailer was upset and badly twisted and broken. Sanks worked most of the day in an attempt to get the truck and trailer out of the ditch and disconnected the tractor or truck portion of the equipment from the semitrailer. He drove this tractor portion to Chicago, but left the semitrailer in the ditch, without making any arrangements with any one living near the locality of his accident to in any way guard the trailer against theft. At Chicago Sanks talked to the operators of a garage relative to hiring some one to haul

the trailer into Chicago, and agreed to pay the amount for which these operators estimated they could secure some one to haul in the trailer. He then left Chicago for Omaha, and did not return to the locality where the trailer had upset until March 8 or 9. He then found that no one had hauled the trailer into Chicago, that its frame and body still lay in the ditch, and that the wheels, springs, axles, brakes, tires and air hose had been stolen. The policy of insurance contains the following provisions:

"In the event of any loss or damage, whether insured against hereunder or not, the assured shall protect the property from other or further loss or damage, and any such other or further loss or damage due directly or indirectly to assured's failure to protect shall not be recoverable under this policy."

This provision of the policy placed an obligation upon the insured to use reasonable diligence in protecting the property from theft after it had been damaged. An act of the insured that constitutes a clear breach of a promissory warranty in an insurance contract and which contributes to the loss will prevent a recovery for such loss. *Johnson v. Caledonian Ins. Co.*, 125 Neb. 759, 251 N. W. 821; Comp. St. 1929, sec. 44-322. The provisions of the policy above quoted constitute a promissory warranty. 32 C. J. 1274. By it the assured agreed to use reasonable care to protect the property from theft after it had been damaged, whether loss by such damage was insured against or not. The damaged trailer was left in a ditch beside a well-traveled highway in a thickly populated community for a period of about seven days without any protection against theft. Such facts, as a matter of law, constituted a breach of the promissory warranty above quoted, existed at the time of the loss, and, as a matter of law, is held to have contributed to the loss by theft, and to prevent a recovery in the second cause.

Several assignments of error made by defendant relate largely to the failure of the trial court to instruct the jury as requested by the defendant relative to Lepinski being

an agent of Sanks and Gayman for the purpose of receiving notice of cancelation. The views of the law and the evidence herein expressed render a discussion of such assignments of error unnecessary. We have considered all assignments of error made by defendant, including that by which the amount of the verdict in the first cause is claimed to be excessive, and find no error prejudicial to defendant in the trial of the first cause.

For reasons above given, the judgment entered in the first cause is affirmed, and that rendered in the second cause is reversed and the second cause remanded, with instructions that it be dismissed.

AFFIRMED IN PART AND REVERSED IN PART.