COUNTY OF YORK, NEBRASKA, APPELLEE, V. RAY A. C. JOHNSON, STATE OF NEBRASKA AUDITOR OF PUBLIC ACCOUNTS, APPELLANT.
432 N.W.2d 215

Filed November 23, 1988.    No. 87-102.

Robert M. Spire, Attorney General, and Charles E. Lowe for appellant.

Charles W. Campbell, York County Attorney, and Vincent

Valentino for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

SHANAHAN, J.

As a political subdivision, County of York ("York County") brought a declaratory judgment action against Ray A. C. Johnson (State Auditor), the Auditor of Public Accounts of the State of Nebraska, to determine whether York County had to pay for an audit conducted by the State Auditor's office. The State Auditor appeals from the judgment that his audit agreement with York County is "void and has no force and effect" and that York County "is not liable for the cost of said audit."

## STANDARD OF REVIEW

As the result of stipulated facts, only questions of law are presented. In an appeal from a declaratory judgment, the Supreme Court, regarding questions of law, has an obligation to reach its conclusion independent from the conclusion reached by the trial court. *Cornhusker Christian Ch. Home v. Dept. of Soc. Servs.*, 227 Neb. 94, 416 N.W.2d 551 (1987); *Boisen v. Petersen Flying Serv.*, 222 Neb. 239, 383 N.W.2d 29 (1986).

## FACTUAL BACKGROUND

Before 1985, the Nebraska Legislature appropriated funds for the State Auditor regarding audits of counties. Consequently, the State Auditor, without charge, had annually audited counties. However, during its 1985 session, the Legislature reduced the appropriation for the State Auditor relative to county audits. In view of the reduced appropriation, the State Auditor formulated a policy for county audits whereby counties were offered the alternative of contracting with the State Auditor or a private accounting firm licensed by the State of Nebraska.

On June 17, 1985, the State Auditor wrote the York County commissioners:

> [The] Legislature has removed the funding for auditing County offices. As a result of this action, my office will no longer perform this service as we have done in the past.

Under my supervision, you are directed to obtain an audit of all of the County offices through the fiscal year ending June 30, 1985. This can be done by contracting with my office, or you can obtain the services of an accounting firm licensed to do business in Nebraska.

When the audit is completed, it will be filed with my office for review and approval by my staff.

Please advise my office whether you wish to contract with the Auditor's office or obtain the services of an accounting firm by July 1, 1985. This will assist me in determining the staff that will be necessary.

Guidelines will be provided for obtaining proposals from firms and for including statutory, compliance and single audit requirements.

Very truly yours,
/s/ Ray A. C. Johnson
Ray A. C. Johnson
Auditor of Public Accounts

The agenda for the York County board's June 25 meeting did not include a prospective audit as an item of the board's business for the meeting. Nevertheless, on June 25, in response to the State Auditor's letter, the York County board voted "that the Board contract with the State Auditor's office to do an audit of all the County office [sic] through the fiscal year ending June 30, 1985." On June 26, the York County clerk wrote the State Auditor:

The York County Board of Commissioners did vote at their regular meeting on June 25, 1985, to contract with the State Auditor's office to do an audit of all of the County offices through the fiscal year ending June 30, 1985.

The Commissioners would like an estimate for budget purposes, of the number of hours it would take and the fee you will charge for auditing our county,

Sincerely,
/s/ Evelyn M. Folts
Evelyn M. Folts, County Clerk
York County, Nebraska

In his June 28 letter to the York County commissioners, the

State Auditor answered the county clerk's letter of June 26:

> You have requested that we audit the financial statements of York County as of and for the year ending June 30, 1985. We are pleased to confirm our acceptance and our understanding of this engagement by means of this letter.
>
> . . . .
>
> Based upon our understanding of the engagement, we estimate our fee to be $10,065.00. However, this is an estimate and the actual cost may be less or may exceed this amount.
>
> We agree to notify you if it becomes evident that the cost will exceed the above amount. Such notification shall include a statement of reasons why we will be unable to complete the services for $10,065.00 and a statement of the additional funds necessary to complete the services.
>
> . . . .
>
> Sincerely,
> /s/ Ray A. C. Johnson
> Ray A. C. Johnson
> Auditor of Public Accounts

At the bottom of the June 28 letter, the State Auditor inserted:

> If the terms of this engagement, as set forth in this letter, are acceptable to you, please sign this copy of the letter and return it to us.

---

Date

Without authorization from the York County board, Evelyn M. Folts, as county clerk, on July 1 signed the audit engagement contained in the State Auditor's letter of June 28.

The State Auditor then conducted an audit of York County's records, compiled and submitted a 28-page report containing specific comments and recommendations, and, on September 23, 1985, billed York County $10,065 for the audit and report.

According to the audit, on July 1, 1984, York County held $59,990 in trust for the state, received $739,820 on behalf of the

state during the fiscal year 1984-85, disbursed $748,038 to the state throughout the fiscal year, and, on June 30, 1985, held $51,772 in trust for the state.

In addition to York County's collection of money for the state, whether remitted to the state or held in trust by the county, the audit reflected other monetary matters involving York County, such as over $8 million collected for and disbursed to school districts, nearly $2 million collected for and disbursed to municipalities within the county, and other moneys collected for and disbursed to other governmental units. The audit pointed out deficiencies in the fiscal conduct of certain county offices. One such instance was a failure to collect distress warrants, resulting in "a loss of tax dollars to various governmental subdivisions, which must be borne by other taxpayers of the County." The audit covered disposition of York County's own funds, including its general fund, special revenue funds, and the capital projects fund, and showed a balance of $2,346,490 in those funds on July 1, 1984. For those three funds during the fiscal year ending on June 30, 1985, the audit reflected receipts of $4,012,759, disbursements of $3,250,225, and a balance of $3,109,024 at the close of the fiscal year. The audit report gave a breakdown of receipts and disbursements pertaining to various county funds and accounts. The audit report also dealt with activities in the funds or accounts of various county officials.

Instead of paying the State Auditor's bill, York County filed a declaratory judgment action, seeking a declaration of the "rights, status and other legal responsibilities, relations or obligations of the parties" and requesting that the court "hold void or of no force and effect the agreement of July 1, 1985," concerning the audit rendered by the State Auditor. See the Uniform Declaratory Judgments Act, Neb. Rev. Stat. §§ 25-21,149 et seq. (Reissue 1985).

### NEBRASKA CONSTITUTION AND APPLICABLE STATUTES

Neb. Const. art. XV, § 18, states:

The state or any local government may exercise any of its powers or perform any of its functions, including financing the same, jointly or in cooperation with any

other governmental entity or entities, either within or without the state, except as the Legislature shall provide otherwise by law.

In 1985, statutes pertaining to county audits included:

An examination of the books, accounts, records and affairs of all county officers in every county in the state shall be made, by the direction and under the supervision of the Auditor of Public Accounts, at such times as the Auditor of Public Accounts shall determine. A complete and comprehensive audit of the books, accounts, records and affairs of all county officials in each county shall be made by the direction and under the supervision of the Auditor of Public Accounts. No notice of the examination or audit shall be given the officer or any person connected with the office to be examined or audited prior to its commencement.

Neb. Rev. Stat. § 23-1608 (Reissue 1983);

The Auditor of Public Accounts is authorized to deputize or empower competent accountants to make the examinations and audits provided for in section 23-1608, and to establish uniformity in the system of keeping accounts at salaries to be fixed by such auditor. The Auditor of Public Accounts is further authorized to employ one assistant for each accountant at a salary to be fixed by such auditor. The salaries of accountants and their assistants shall be paid out of such fund as the Legislature may specifically appropriate for that purpose during any biennium.

Neb. Rev. Stat. § 23-1613 (Reissue 1983); and

It shall be the duty of the Auditor of Public Accounts:

. . . .

(4) Conduct audits and related activities for state agencies, political subdivisions of this state, or grantees of federal funds disbursed by a receiving agency on a contractual or other basis for reimbursement to assure proper accounting by all such agencies, political subdivisions, and grantees for funds appropriated by the Legislature and federal funds disbursed by any receiving agency. The auditor shall deposit the receipts for such

audits and services in the cash fund maintained for the making of cooperative audits.

Neb. Rev. Stat. § 84-304 (Cum. Supp. 1984).

We note amendments to §§ 23-1608 and 84-304(4):

Each county board shall cause an examination and a complete and comprehensive annual audit to be made of the books, accounts, records, and affairs of all county officers in the county. The audits shall be conducted annually, except that the Auditor of Public Accounts may determine an audit of less frequency to be appropriate but not less than once in any three-year period. Each county board may contract with the Auditor of Public Accounts or select a licensed public accountant or certified public accountant or firm of such accountants to conduct the examination and audit and shall be responsible for the cost of the audit pursuant to the contract. The original copy of the audit shall be filed in the office of the Auditor of Public Accounts.

§ 23-1608 (Reissue 1987), and

Conduct audits and related activities for state agencies, political subdivisions of this state, or grantees of federal funds disbursed by a receiving agency on a contractual or other basis for reimbursement to assure proper accounting by all such agencies, political subdivisions, and grantees for funds appropriated by the Legislature and federal funds disbursed by any receiving agency. *The Auditor of Public Accounts may contract with any political subdivision to perform the audit of such political subdivision required by or provided for in section 23-1608 or 79-2210.04 or this section and charge the political subdivision for conducting the audit. The fees charged by the auditor for conducting audits on a contractual basis shall be in an amount sufficient to pay the cost of the audit. The fees remitted to the auditor for such audits and services shall be deposited in the Auditor of Public Accounts Cash Fund.*

§ 84-304(4) (Supp. 1987) (amendatory wording emphasized).

## DISTRICT COURT'S JUDGMENT

The district court concluded that the State Auditor had no

duty to conduct county audits under § 23-1608 (Reissue 1983), but only discretion to do so, and that the Legislature effectively repealed any county audit program by eliminating funds for county audits. To support its conclusion that elimination of appropriation was a legislative action tantamount to repeal of the statute concerning county audits, the district court pointed out that the statutory scheme for county audits was amended after the audit in question and expressly allows the State Auditor to charge counties for auditing services. See § 84-304(4) (Supp. 1987).

The State Auditor contends that York County and he, as Auditor of Public Accounts, were authorized to enter a contract for an audit and, therefore, the county is obligated to pay for the audit rendered. To counter the State Auditor's claim, York County asserts that neither the State Auditor nor the county had statutory authority to achieve a county audit; hence, York County is not obligated to pay for the audit rendered. Also, York County contends that the agenda for the June 25, 1985, meeting of the York County board did not include the subject of an audit, which omission nullifies York County's action regarding the audit. Neb. Rev. Stat. § 84-1411(1) (Reissue 1987), in reference to a notice of a meeting governed by the "Public Meetings Act," Neb. Rev. Stat. §§ 84-1408 et seq. (Reissue 1987), requires that the "notice shall contain an agenda of subjects known at the time of the publicized notice . . . ." In reference to § 84-304(4) (Cum. Supp. 1984), validity of the "cash funds" and use or disposition of such funds are not issues pertinent to disposition in the case now presented for review.

Perhaps recurrence of some of the questions raised in this appeal will be unlikely in view of legislation enacted after the audit in question. Nevertheless, in view of the extant law at the time of the audit, questions remain for resolution in the present appeal.

First, we address York County's contention that the deficient agenda permits the county to maintain an action to declare the audit agreement "void" on account of deviation from the Public Meetings Act regarding content of an agenda. See § 84-1414(1) (declaration by a district court that a public body's

action is "void" as the result of failure to comply with the Public Meetings Act).

We note, however, that the Public Meetings Act provides: "The Attorney General and the county attorney of the county in which the public body ordinarily meets shall enforce the provisions of [the Public Meetings Act]," § 84-1414(2), and "Any citizen of this state may commence a suit [under the Public Meetings Act] for the purpose of declaring an action of a public body void," § 84-1414(3).

Nebraska's Attorney General is not involved as a party to these proceedings. Thus, we are not required to consider those situations in which the Attorney General may properly maintain an action to enforce the provisions of the Public Meetings Act. The county attorney of York County appears in these proceedings only in a representative capacity, a lawyer-client relationship concerning York County as a political subdivision. Therefore, the party actually maintaining the action is York County, not the county attorney in his official capacity on behalf of the State of Nebraska or in his personal capacity as a private citizen of Nebraska. Under the Public Meetings Act, a county lacks capacity to maintain an action to declare its official conduct "void" for noncompliance with the act. See § 84-1414(2) and (3). The Public Meetings Act and any action thereunder are inapposite to the disposition of the State Auditor's appeal.

Consequently, the only real issue is whether the State Auditor can charge York County for the audit rendered.

Section 23-1608 (Reissue 1983) requires an audit of every county's "books, accounts, records and affairs." The time or date for undertaking and completing the mandatory audit rests in the State Auditor's discretion, which is exercisable under § 23-1608. Although in 1985 the Legislature withheld funds for county audits, the Legislature has yet to withdraw, by amendment or repeal of § 23-1608, the State Auditor's authority concerning mandatory county audits. Nothing in § 23-1608 serves as a basis for the premise or conclusion that the State Auditor lacks the official capacity or authority to render an audit for a county. Also, Neb. Const. art. XV, § 18, authorizes the "state or any local government," in furtherance

of a governmental purpose, to exercise its powers in cooperation "with any other governmental entity or entities." As the statute existed in 1985, § 84-304(4) (Cum. Supp. 1984) expressly obligated, and, therefore, empowered the State Auditor to "[c]onduct audits and related activities for state agencies [and] political subdivisions," which obviously included York County as a political subdivision of the State of Nebraska. Further, § 84-304(4) (Cum. Supp. 1984) requires that the "auditor shall deposit the receipts for such audits and services in the cash fund maintained for the making of cooperative audits." If the State Auditor is obligated to deposit such receipts as directed and described in § 84-304(4), the State Auditor necessarily has the power to charge for services producing those receipts. Otherwise, the State Auditor's only receipts from counties for audits would be gratuities or donations, a highly unlikely situation. Under the circumstances, by directing that there be an audit of York County's records, the State Auditor was exercising authority expressly conferred by § 23-1608. In furtherance of Neb. Const. art. XV, § 18, the statutory duties of the State Auditor, prescribed in § 84-304(4), include conducting or carrying out an audit for counties and depositing payments for audit services into a specified account pertaining to "cooperative audits." We, therefore, hold that the State Auditor, pursuant to §§ 23-1608, 23-1613, and 84-304(4), has authority to conduct an audit of a county's records and, on behalf of the State of Nebraska, charge for the services rendered in conjunction with that audit.

Did the county have the authority to enter an agreement for the audit which is the subject of the present proceedings?

Neb. Rev. Stat. § 23-104 (Reissue 1987) provides in part: "Each county shall have power . . . (6) to make all contracts and to do all other acts in relation to the property and concerns of the county necessary to the exercise of its corporate powers." Neb. Rev. Stat. § 23-106(1) (Reissue 1987) directs: "The county board shall manage the county funds and county business except as otherwise specifically provided."

In *Thiles v. County Board of Sarpy County*, 189 Neb. 1, 200 N.W.2d 13 (1972), we held that §§ 23-104(6) and 23-106(1) confer on a county the powers necessary to carry out the

county's governmental duties. In *Thiles*, the court held that a county board has implied authority to hire an administrative assistant. See, also, *Speer v. Kratzenstein*, 143 Neb. 310, 12 N.W.2d 360 (1943) (a county board has implied authority to hire a real estate appraiser to assist the county board of equalization).

As we have already stated, the State Auditor's auditing a county's records is a statutorily authorized activity. When the State Auditor ordered that York County's records be audited, obtaining an audit was mandatory under § 23-1608, and not a discretionary matter for the county board.

In *Thiles*, we said: "[C]ounty boards may not hire a person to perform (1) unauthorized acts, (2) official discretionary duties of the board, or (3) statutory official duties of the board or another county or state official." 189 Neb. at 6, 200 N.W.2d at 18. In construing the statutory predecessor of § 84-304, this court, in *Campbell v. Douglas County*, 142 Neb. 773, 7 N.W.2d 764 (1943), pointed out the alternatives regarding an audit—one conducted by the State Auditor or by a qualified accountant. In *Campbell*, this court also recognized that audits of governmental offices or agencies were "conducted by and primarily for the interests of the state." 142 Neb. at 777, 7 N.W.2d at 767. Forgoing an illustrative description of a county's or county official's accountability and potential liability to various governmental entities, such as the State of Nebraska, school districts, and other public bodies authorized to levy taxes, we believe York County, as any other county, derives a benefit from an audit of county activities concerning collection, disbursement, and retention of tax revenues. Without a metaphysical analysis of the degree to which the state and county government benefit from a cooperative audit, suffice it to say that a county unquestionably receives a benefit from an audit of its activities involving public moneys. Consequently, we hold that, pursuant to §§ 23-104(6) and 23-106(1), a county, through its county board, has the authority to enter an agreement with the State Auditor to achieve a county audit required by § 23-1608.

When the State Auditor ordered the audit of York County's records, the county had authority to obtain accounting services

to effect the mandatory audit. At its meeting on June 25, 1985, the county board accepted the State Auditor's offer to conduct the mandatory audit. The State Auditor conducted the audit and reported to the county board, which has not negated or disavowed receipt of a benefit consequent to the official audit but has only denied the State Auditor's authority to render the audit. True, the State Auditor and York County lacked an agreement specifying payment for the audit. However, when services are furnished to a party and knowingly accepted by that party, the law implies a promise to pay the reasonable value of the services rendered. *Ruzicka v. Petersen*, 213 Neb. 642, 330 N.W.2d 913 (1983); *Denton v. Nelson*, 205 Neb. 833, 290 N.W.2d 462 (1980).

Under the circumstances, York County is liable for the reasonable value of the audit services rendered by the State Auditor. The district court should have entered declaratory judgment accordingly. Therefore, we reverse the district court's judgment and direct that judgment be entered in accordance with this opinion.

REVERSED AND REMANDED WITH DIRECTION.