H.L. JELSMA AND TOMMY JELSMA, DOING BUSINESS AS SPA, INC.,
APPELLEES, V. SCOTTSDALE INSURANCE COMPANY, APPELLANT.

437 N.W.2d 778

Filed March 31, 1989.   No. 87-794.

Thomas J. Walsh, Jr., of Walsh, Fullenkamp & Doyle, for appellant.

Hal Bauer, of Bauer, Galter & O'Brien, for appellees.

HASTINGS, C.J., WHITE, CAPORALE, and FAHRNBRUCH, JJ., and COADY, D.J.

HASTINGS, C.J.

Appellees, H.L. and Tommy Jelsma, brought this declaratory judgment action against the appellant, Scottsdale Insurance Company, seeking a determination in the district court as to whether Scottsdale's cancellation of an insurance policy was effective prior to a fire loss which occurred on July 29, 1986, and whether the policy was in effect as to the loss. From a judgment of the trial court declaring that the cancellation was not effective and that the policy was in effect on the date of the loss, Scottsdale has appealed. We affirm.

A suit for declaratory judgment is an action sui generis and may involve questions of law or equity or both. *Beatrice Nat. Bank v. Southeast Neb. Co-op*, 230 Neb. 671, 432 N.W.2d 842 (1988).

Whether a declaratory judgment action is treated as an action at law or one in equity is to be determined by the nature of the dispute. *Gard v. Pelican Publishing Co.*, 230 Neb. 656, 433 N.W.2d 175 (1988).

The determination of factual issues in a declaratory judgment action which would otherwise be an action at law will not be disturbed on appeal unless they are clearly wrong. *Gard v. Pelican Publishing Co., supra*; *Beatrice Nat. Bank v. Southeast Neb. Co-op, supra*.

In an appeal from a declaratory judgment, the Supreme Court, regarding questions of law, has an obligation to reach its conclusion independent from the conclusion reached by the trial court. *County of York v. Johnson*, 230 Neb. 403, 432 N.W.2d 215 (1988).

Prior to September 10, 1985, the Jelsmas contacted Alexander & Alexander, Inc., a Lincoln insurance agency, seeking fire insurance coverage for their business, the Royal Grove. Alexander & Alexander requested appropriate coverage through River City Underwriters, Inc., an Omaha business entity which acted as a managing general agent for several insurance companies, including Scottsdale. River City Underwriters arranged for coverage to be provided by six insurers, one of which was Scottsdale, and issued policies insuring the Royal Grove for a period of 1 year, commencing September 10, 1985.

River City Underwriters, on behalf of Scottsdale, issued a notice of cancellation of the Scottsdale policy, dated April 18, 1986, and mailed it to the Jelsmas. At the Jelsmas' request, Alexander & Alexander obtained bids for replacement insurance coverage on the Royal Grove. However, the Jelsmas decided not to replace the canceled policy because the premium was too high. Alexander & Alexander advised the Jelsmas of the effect of the potential coinsurance penalty in the event a loss occurred and the canceled coverage was not replaced.

After the Jelsmas' policy was canceled, Scottsdale refunded the unearned premium of $546 to River City Underwriters through the monthly statement sent to River City Underwriters for the month ending April 30, 1986. River City Underwriters, in turn, refunded the unearned premium to Alexander & Alexander for the month ending June 30, 1986. There was evidence that refunding unearned premiums in this manner is standard procedure in the industry. Alexander & Alexander sent a check to the Jelsmas dated December 12, 1986, which included the premium refund Alexander & Alexander had received from River City Underwriters for the canceled Scottsdale policy. The Jelsmas have not cashed the check.

Scottsdale assigns as error: (1) The trial court erred in finding that the cancellation was not in accordance with the provisions

of the policy; (2) the trial court erred in failing to find that the return of the unearned premium by Scottsdale to Alexander & Alexander constituted a return of the unearned premium to the Jelsmas and cured any breach of contract which otherwise might have existed in connection with the cancellation notice issued by Scottsdale; (3) the trial court erred in failing to find that the Jelsmas' claim was barred because they failed to mitigate their damages; and (4) the trial court erred in failing to find that the Jelsmas' conduct after receiving the notice of cancellation and before the fire loss constituted a waiver of any breach of the insurance contract by Scottsdale.

## CANCELLATION OF THE POLICY

The Scottsdale policy provided in part as follows:

> This policy may be cancelled at any time by this Company by giving the insured a five days' written notice of cancellation with or without tender of the excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. *Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand.*

(Emphasis supplied.)

Below a legend stating "(Applicable item marked [X])," the body of the cancellation notice sent to the Jelsmas contains several general purpose statements. Within the "Cancellation" section is the information that the effective date of cancellation is "4-30-86." Also within the general purpose portion of the notice is a section entitled "Premium Adjustment" containing four sentences, each preceded by a box, the last two of which are set forth as follows:

> [ ] Enclosed is $____, being amount of return premium at pro rata rate for the unexpired term of this policy.

> [ ] The excess of paid premium, if any, above the pro rata premium for the expired time, (if not tendered) will be refunded upon demand. (The words "upon demand" do not apply in Kansas.)

(Emphasis omitted.) None of the boxes were marked on the notice of cancellation or nonrenewal sent to the Jelsmas.

The burden of establishing an effective cancellation before a loss is on the insurer, and notice of cancellation must be in

accord, and in substantial compliance, with the provisions of the policy relating thereto, and peremptorily explicit and unconditional. *Stilen v. Cavalier Ins. Corp.*, 194 Neb. 824, 236 N.W.2d 178 (1975). Scottsdale argues in its brief that cancellation was in substantial compliance with the provisions of the policy because "the Jelsmas could have and should have been able to glean that information [relating to demand of the refund] without that 'X' being in that box." Brief for appellant at 9.

Although Nebraska has no case directly on point, the case of *Walls v. Goshen Cent. Dispatch Co., Inc.*, 128 Misc. 2d 959, 491 N.Y.S.2d 925 (1985), addresses the issue of the effectiveness of a notice of cancellation when the insurer fails to mark an applicable provision. In *Walls*, the insurer argued that the notice of cancellation complied with regulations since the required language, although not marked with an "x," appeared on the notice. The court said:

> This court cannot concur with the position taken by defendant Tokio. The notice of cancellation contains a legend stating "Applicable item marked X". *The implication of that language is that items not marked with an "X" are not applicable to the insured and should be ignored.* Thus, the insured is informed it does not have the right to seek any relief found in those paragraphs not marked with an "X". *The failure to mark the paragraphs with an "X" has the same effect as if defendant Tokio had never printed those paragraphs.*

(Emphasis supplied.) 491 N.Y.S.2d at 928. Furthermore, "the failure to properly mark the notice of cancellation, instructed the recipient of the notice to ignore the paragraph containing such notice. Thus, this cancellation notice cannot be said to be in substantial compliance with § 19, par. 1." 491 N.Y.S.2d at 928. See, also, *K & G Feathered Pets, Inc. v. Lo Presti*, 100 A.D.2d 894, 474 N.Y.S.2d 581 (1984); *Federal Ins. Co. v. Rivera*, 122 Misc. 2d 506, 471 N.Y.S.2d 232 (1984); *Civil Service Employees Ins. Co. v. Rodriquez*, 25 Ariz. App. 534, 544 P.2d 1135 (1976).

We agree with the reasoning of the New York court. The burden should not be on the insureds in this case to read the

four sentences under the premium adjustment section and to determine which were applicable to them. Since the sentence stating that the excess of paid premium (if not tendered) would be refunded upon demand was not marked, the Jelsmas could ignore it. Scottsdale chose the language of its notice, voluntarily employed that means to attempt cancellation, and must be bound by that choice. The notice of cancellation or nonrenewal as tendered failed to substantially comply with the cancellation provision of the policy.

## PAYMENT OF THE UNEARNED PREMIUM TO ALEXANDER & ALEXANDER

Scottsdale argues that even if the cancellation notice was defective, the breach was cured by actual refund of the unearned premium to the Jelsmas, albeit to Alexander & Alexander rather than to the insureds themselves. According to Scottsdale, Alexander & Alexander was acting as an insurance broker for the Jelsmas, and payment to an insured's insurance broker is considered payment to the insured.

Contrary to Scottsdale's assertion, payment to an insured's insurance broker is considered payment to the insured only under certain circumstances.

> To render a tender of the unearned premium to an alleged agent of the insured effective for the purpose of terminating a policy of insurance which provides that it may be terminated by refunding a ratable proportion of the premium for the unexpired term of the policy, it must be shown that the one to whom the tender was made was, at the time, the authorized agent of the insured for the purpose of the cancellation of the policy, or that the act was subsequently ratified by the insured.

17 G. Couch, Couch on Insurance 2d § 67:235 at 689-90 (rev. ed. 1983). See, also, 43 Am. Jur. 2d *Insurance* § 404 (1982).

An insurance broker is not, as a matter of law, the insured's agent for receipt of a premium refund upon cancellation of the insurance policy. *Chesapeake House, Inc. v. Lee Mut. Ins. Agency, Inc.*, 239 So. 2d 602 (Fla. 1970). Whether the insurance broker was the insured's agent for receipt of the premium refund upon cancellation is a question of fact. *Id.*

An insurance broker does not become the agent of the

insured for the purpose of accepting a cancellation of the policy by the mere fact that he acted as the agent of the insured in procuring the insurance. *Quong Tue Sing v. Assurance Corp.*, 86 Cal. 566, 25 P. 58 (1890). Payment of the unearned premium to a broker, who had authority merely to buy insurance for the insured, does not constitute payment of the unearned premium to the insured. 17 G. Couch, *supra*.

In cases in which the court found that payment of a premium refund to the insurance broker constituted payment to the insured so that cancellation of the policy was effective, the facts supported a conclusion that the broker was acting as the agent of the insured for the purpose of accepting cancellation of the policy. Generally, in such cases it was the insured and not the insurance company canceling the policy. The courts found the broker to be the insured's agent for cancellation because the insured requested the broker to contact the insurer to cancel the insurance. See, *White v. United States Fidelity and Guaranty Co.*, 382 F.2d 978 (1st Cir. 1967); *Middle Western Tel. Co. v. U. S. Fire Ins. Co.*, 296 Ill. App. 260, 16 N.E.2d 188 (1938); *Commercial Credit Corp. v. Standard Marine Ins. Co.*, 221 So. 2d 232 (Fla. 1969); *Kaufman v. McLaughlin Company*, 357 F.2d 283 (D.C. 1966). The general rule has been articulated in the following manner: "Where the insured negotiates a cancellation through his broker who procured the policy, return of the unearned premium to such broker constitutes a return to the insured." 6 G. Couch, Couch on Insurance 2d § 34:102 at 952 (rev. ed. 1985).

Scottsdale cites 17 G. Couch, *supra*, § 67:237, and *Commercial Credit Corp. v. Standard Marine Ins. Co., supra*, for the proposition that the fact that an unearned premium is returned to the wrong person does not necessarily require a holding that there was no effective cancellation. Therefore, according to Scottsdale, even if this court determines that the refund of the unearned premium to Alexander & Alexander does not constitute a refund of the unearned premium to the appellees, it does not follow that the cancellation of the policy was not effective.

Scottsdale's reasoning is not sound. The court in *Commercial Credit, supra*, found that the insurance company's

mistake in crediting the broker's account with the unearned premium, rather than returning it to the insured as directed by the broker, did not invalidate the cancellation of the policy. The case is really just another case in which the insured requested the cancellation of the insurance policy through its broker, so that the broker was acting as the insured's agent for the purpose of the cancellation. The only difference in the case is that the insured, through its broker, specifically requested that the unearned premium be returned directly to it.

In the case at bar, Scottsdale, the insurance company, not the Jelsmas, the insureds, canceled the policy. In its order, the trial court stated:

> There is no evidence that plaintiffs gave Alexander & Alexander specific agency authority to accept cancellation of the policy or accept tender of the return premium in the event of cancellation by the defendant company. Plaintiffs did give Alexander & Alexander authority to arrange purchase of the insurance, but only after plaintiffs had been informed of the coverage and the premium cost. . . .

> The evidence is that Alexander & Alexander was the agent of plaintiffs for securing insurance, but not for all times and not for all matters connected with the insurance that it procured.

These factual findings of the trial court are not clearly wrong. The return of the unearned premium to Alexander & Alexander did not constitute return to the Jelsmas and therefore did not cure the defect in the notice of cancellation.

## MITIGATION OF DAMAGES

It is a well-established rule in Nebraska that when there has been a breach of contract by one party resulting in a loss to the other, it is the duty of such other party to take all reasonable steps to reduce the amount of his damages. Furthermore, one who fails to perform his duty to mitigate his damages may not recover from the party breaching the contract the damages which would have been avoided had the duty to mitigate been performed. See *Smith v. Erftmier*, 210 Neb. 486, 315 N.W.2d 445 (1982).

Scottsdale contends that the Jelsmas were under a duty to mitigate their damages by obtaining replacement insurance

coverage after receiving the notice of cancellation or nonrenewal. Since Jelsmas failed to replace the canceled coverage, Scottsdale claims, their conduct constitutes a failure to mitigate their damages sufficient to bar their claim.

The flaw in Scottsdale's argument is that this is not a breach of contract action for wrongful cancellation of appellees' insurance. Rather, this is a declaratory judgment action to determine whether the purported cancellation of the Jelsmas' insurance was effective. Therefore, the doctrine of mitigation of damages is inapplicable to the case.

The two cases cited by Scottsdale in support of its mitigation of damages argument are distinguishable from the case at bar. The insured in *Taylor v. U. S. Casualty Co.*, 229 S.C. 230, 92 S.E.2d 647 (1956), brought an action for fraudulent breach of contract against the insurer. Involved in *Johnson v. General Mut. Ins. Co.*, 24 N.Y.2d 42, 298 N.Y.S.2d 937, 246 N.E.2d 713 (1969), were declaratory judgment actions arising out of an automobile accident and the insurer's failure to defend the tort action. The insured cross-appealed against the insurer for consequential damages resulting from the wrongful cancellation of his liability insurance. The insured's cross-claim was dismissed without prejudice to his maintaining a separate action at law for that purpose, in which action the issue of mitigation of damages would be relevant.

### WAIVER OF DEFECTIVE CANCELLATION

Waiver is a voluntary and intentional relinquishment or abandonment of a known existing legal right or such conduct as warrants an inference of the relinquishment of such right. *Farmers State Bank v. Farmland Foods*, 225 Neb. 1, 402 N.W.2d 277 (1987). In order to establish a waiver of a legal right, there must be clear, unequivocal, and decisive action of a party showing such a purpose, or acts amounting to estoppel on his part. *Jones v. Burr*, 223 Neb. 291, 389 N.W.2d 289 (1986).

A written contract may be waived in whole or in part, either directly or inferentially, and the waiver may be proved by express declarations manifesting the intent not to claim the advantage, or by so neglecting and failing to act as to induce the belief that it was the intention to waive. *Pearce v. ELIC Corp.*, 213 Neb. 193, 329 N.W.2d 74 (1982).

Scottsdale contends that the Jelsmas were under a duty to notify Scottsdale that the cancellation notice was defective and that their failure to so notify Scottsdale until after the loss constitutes a waiver of their rights.

There are only two Nebraska cases applicable to the issue. In *Sanks v. St. Paul Fire & Marine Ins. Co.*, 131 Neb. 266, 267 N.W. 454 (1936), cancellation of policies by the insurer through notice to the agent, authorized by the insureds to handle all of their insurance, without notice to the insureds, was ratified when the insureds accepted the benefit of the unearned premium, which was used by the agent to purchase substitute policies.

The insureds in *McRae v. Mercury Ins. Co.*, 126 Neb. 469, 253 N.W. 645 (1934), brought an action to recover on an automobile fire insurance policy. The policy was purportedly canceled November 25, 1929. The unearned premium was returned to the finance corporation which had obtained the insurance on the insureds' automobile. The finance corporation then credited the unearned premium to the insureds' account on its own books. After obtaining other insurance, the corporation charged the insureds' account for the premium.

Although they received notice November 25, 1929, that the first policy had been canceled, it was not until January 1930 that the insureds complained about not receiving the unearned premium. The finance corporation explained how the unearned premium was used to obtain new insurance. The car was destroyed by fire on July 4, 1930. Thereafter, the insureds challenged the effectiveness of the cancellation of the policy.

The court stated, "Acquiescence in a cancelation notice will operate to cancel the policy and will work an estoppel to assert that the policy is still in force." *Id.* at 473, 253 N.W. at 646. Since the insureds appeared to be satisfied with the finance corporation's adjustment of the return premium and never notified the insurer that they repudiated the cancellation, the court found that they had acquiesced in the fact of cancellation.

Unlike the insureds in *Sanks* and *McRae*, the Jelsmas did not acquiesce in the cancellation of their policy by allowing the unearned premium to be used to purchase replacement

insurance. Although Tommy Jelsma did ask Alexander & Alexander to obtain bids for replacement insurance, merely exploring the possibility of obtaining replacement insurance does not necessarily constitute acquiescence in a defective cancellation of the old insurance. See, *Republic National Life Insurance Company v. Blain*, 425 S.W.2d 347 (Tex. 1968) (neither insured nor the beneficiary was estopped from claiming under the purportedly canceled policy simply because they attempted to obtain other insurance after they received notice from the insurer that the insured was no longer covered); 17 G. Couch, Couch on Insurance 2d § 67:418 (rev. ed. 1983).

Scottsdale bases its waiver argument on the facts that the Jelsmas never gave notice prior to the loss that they felt the cancellation was ineffective and that they never requested the return of the unearned premium. However, Tommy Jelsma testified at trial that he never received the policy. Therefore, it is unlikely that the Jelsmas knew that they would have to demand the unearned premium if it had not been tendered along with the notice of cancellation.

Although the issue of waiver was not addressed by the trial court in its order, implicit in the finding that the cancellation was not effective and that the policy was in effect on the date of loss is a finding that the Jelsmas had not waived the defect. The record supports a finding that the Jelsmas never received a copy of the Scottsdale policy and hence would not have known of the policy provisions regarding cancellation and return of unearned premium. Without such knowledge, the Jelsmas could not waive the defect in the notice.

The judgment of the district court is affirmed.

AFFIRMED.